IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 92-9083

_____

UNITED STATES OF AMERICA,                    Plaintiff-Appellee,

versus

TIMOTHY WAYNE SHANNON,                       Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

May 4, 1994

Before POLITZ, Chief Judge, GARWOOD, Circuit Judge, and PARKER[*],
District Judge.

ROBERT M. PARKER, District Judge:

Timothy Wayne Shannon was convicted by a jury of armed bank robbery, using a firearm during and in relation to a federal crime of violence, and possession of a firearm by a convicted felon. He was sentenced to a total of 562 months in prison. Shannon appeals the conviction on four grounds: 1) evidence of the involvement of a firearm was not sufficient to support the convictions in counts 1, 2, and 3; 2) the district court abused its discretion in refusing to suppress evidence and statements from an allegedly unconstitutional, warrantless entry of a motel room; 3) the district court's statements to a venireman deprived him of an impartial jury; and 4) the district court abused its discretion in

_____

    [*] Chief Judge of the Eastern District of Texas, sitting by designation.

refusing to allow a collateral challenge to a prior state conviction at sentencing. We AFFIRM.

FACTS AND PROCEDURAL HISTORY

On January 24, 1992, Patrick Shannon, brother of Timothy Wayne Shannon (Shannon), purchased a Jennings .22 caliber semi-automatic pistol which Shannon admitted to stealing, and which the Government introduced at trial as Exhibit HG-1. On January 31, 1992, Shannon entered First Gilbralter Bank in Richardson, Texas, approached Johnnie Moore (Moore), a drive-thru window teller, demanded money and drew a gun. Moore described the gun as being short, silver and "like a cigarette lighter." Shannon then demanded the drawer contents from adjacent teller Rebecca Cruz (Cruz). Cruz later identified Shannon at trial as the bank robber, although she was unable to pick out Shannon from a spread of photos shown to her by the FBI, and testified that the bank robber had a gun that appeared to be or was the gun introduced by the Government as Exhibit HG-1. While Shannon was addressing Cruz, Moore prepared bait money with an exploding dye pack, pulling the clip which activated the bank's surveillance camera. Cruz also activated the camera. Shannon left the bank with approximately $3,100.00.

Shannon's probation officer, Elizabeth Epie, whom he visited on January 31, testified at trial that Shannon was the person photographed by the surveillance camera, and that he was wearing the same clothes she had seen him in at their visit. Randall Riley (Riley), and acquaintance of Shannon, also identified him as the person in the surveillance camera photographs.

2

Rene Pieper (Pieper) was driving near the First Gilbralter Bank when she observed a brown older model car with the engine running in an alley near the bank. The driver of the car was Charles Morse (Morse). Pieper testified that she saw Shannon run from the bank into the path of her car. Then she saw the brown car pull out with Shannon in the front passenger seat. She followed the car and wrote down the license plate numbers, returned to the bank, and reported what she saw to the police.

Morse testified that he took Shannon to Morse's house and later to Room 140 at a Days Inn in Garland, Texas, where they attempted to wash out the dye on the money with various chemicals. Morse did not see Shannon with a gun on January 31, but did see him in possession of a .22 semi-automatic pistol on a previous occasion, and that the pistol he saw was similar to the Government's Exhibit HG-1.

On February 5, 1992, FBI Agent Miles Burden filed a criminal complaint against Shannon, and an arrest warrant was issued charging Shannon with the January 31 robbery of First Gilbralter Bank.

On February 6, 1992, Shannon was driving around in his car with Riley when Shannon exited the car and entered the Lake Highlands Branch of Bank One in Dallas, Texas. He approached Susan Krempl, a teller at the drive-thru window and lobby window, showed her a silver gun and demanded money. Krempl gave him bait money containing a tracking device. She later identified Shannon as the robber and also identified the bait money list. Another teller

activated the surveillance camera, but Shannon passed under the camera before it was activated. He returned to the car with approximately $2,900.00 in cash and a gun that resembled the Government's Exhibit HG-1. He told Riley he had robbed the bank.

Shannon drove to the Jupiter Inn Motel, parked his car across the street, and he and Riley went to Room 210, which was rented by Robert Reid (Reid). Shannon placed the gun under the mattress and tried to shave off his mustache. An Electronic Tracking System (ETS) unit tracked the signal from the tracker device place with the bait money to the Jupiter Inn Motel. With the hand-held ETS unit, police officers tracked the signal to Room 211. Believing that the robber was in Room 211, the officers decided to clear the occupants in the surrounding rooms in case the incident led to an exchange of gunfire. They knocked on Room 210; the door came open, and they observed Shannon, Riley, and Reid sitting on the bed.

Dallas Police Officer Marvin Swafford (Swafford) noticed that all three men fit the description of the suspect. He asked the men to step out of the room. As Shannon walked past the officer carrying the ETS unit, the signal "went directly" to one of Shannon's boots. The officers searched the boot and discovered the bait money and tracking device. All three men were arrested and given their *Miranda* warnings. Shannon told Swafford that Riley and Reid did not participate in the bank robbery, and that he acted alone. Believing that the ETS unit was a metal detector, he told the officers that the gun was under the mattress in the motel room. The officers then entered the room and retrieved the gun from under

4

the mattress.

On February 26, 1992, Shannon was charged in a six-count indictment with armed bank robbery, 18 U.S.C. §§ 2113(a) and (d) (Counts 1 and 4), using a firearm during and in relation to a federal crime of violence, 18 U.S.C. § 924(c)(1) (Counts 2 and 5), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (Counts 3 and 6). Shannon pleaded not guilty on all counts and proceeded to trial before a jury. Prior to trial, Shannon moved to suppress evidence seized from his person and from the motel room and statements made to government agents and police officers. The district court denied the motions. Shannon moved for judgment of acquittal at the close of the Government's case-in-chief, but did not renew that motion at the close of his own evidence. The jury found Shannon guilty on all counts. He was sentenced by the district court to a term of imprisonment totaling 562 months, along with supervised release for three years and $3,631.00 in restitution. Shannon timely appeals.

MOTION TO SUPPRESS

In reviewing a district court's ruling on a motion to suppress, the reviewing court must consider the evidence in the light most favorable to the prevailing party, accepting factual findings unless clearly erroneous and reviewing questions of law *de novo*. *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993).

Shannon argues that the search of Room 210 of the Jupiter Inn Motel on February 6, 1992 was unconstitutional, and that the district court erred in refusing to suppress the fruits of that

5

search.  He claims that the search amounted to a warrantless entry without probable cause and absent exigent circumstances.

The Government argues that Shannon has failed to establish his standing to challenge the search.  In order to establish standing to challenge the search, Shannon must show that he has a privacy or property interest in the premises searched or items seized which justifies a reasonable expectation of privacy therein. *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir.), *cert. denied*, ___ U.S. ___, 113 S.Ct. 621 (1992).  We find it unnecessary to address the issue of Shannon's standing since it does not effect the outcome of this case.  Therefore, we will assume, as the district court did, that Shannon does have standing to challenge the search.

Shannon argues that there was no probable cause to support entry of Room 210 because the ETS unit led police officers to believe that the suspects would be found in Room 211.  The ETS unit led the officers to Room 211.  Recognizing their obligation to protect the occupants of the rooms adjacent to Room 211, the officers knocked on the door of Room 210.  When the door came open, the officers did not enter the room.  Instead, they asked the three men inside (who they later discovered to be Shannon, Reid and Riley) to clear the room so that they could secure the area.  When Shannon, Riley and Reid exited the room, the ETS unit alerted to Shannon's boot.  With probable cause to search Shannon's boot, the officers discovered the tracker and the bait money and arrested all three men.  It was not until after Shannon was arrested and read his *Miranda* warnings that he identified the location of the gun to

6

the officers stating, "Has that metal detector you have in your hand discovered the gun is under the mattress in the room?" Then Shannon indicated what side of the mattress the gun was under. The officers did not enter the motel room until after Shannon directed them to the mattress to recover the Government's Exhibit HG-1.

The warrantless search of someone's motel room is presumptively unreasonable unless the occupant consents or exigent circumstances exist to justify the intrusion. *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993). If the officers have no warrant or consent, they must have exigent circumstances to enter a suspect's motel room, even if they already have probable cause to arrest the suspect. *Id.* The exigent circumstances that must exist include: hot pursuit of a suspected felon; the possibility that evidence may be removed or destroyed; and danger to the lives of officers or others. *Id.* at 247-48.

The district court found that the search of Room 210 of the Jupiter Inn Motel and the seizure of the gun inside the room was valid. Considering the record as a whole, we find that the district court's findings were not clearly erroneous. The officers had probable cause to arrest Reid, Riley and Shannon after Shannon's boot alerted the ETS unit. Once the officers had arrested the three suspects and given them their *Miranda* warnings, Shannon informed the officers that a gun was still in the motel room. Until that moment, the officers had not entered the motel room, so they were unaware of who might still be inside the room. After hearing Shannon's statement regarding the location of a gun,

7

it would be reasonable for the officers to believe that there was a possibility of danger to themselves or other motel guests if an unknown suspect who might still be inside the room were to gain access to the gun after hearing Shannon tell the officers were the gun was located. Therefore, we find that exigent circumstances arose when Shannon told the officers that the gun was under the mattress inside the motel room, and we hold that the search of Room 210 of the Jupiter Inn Motel was valid and the district court did not err in denying Shannon's motion to suppress the fruits of the search of Room 210 of the Jupiter Inn Motel.[1]

VOIR DIRE

The district court has broad discretion in conducting voir dire, and the reviewing court will not overturn its decision regarding impartiality absent a clear abuse of discretion. *United States v. Rodriguez*, 993, F.2d 1170, 1176 (5th Cir. 1993). An abuse of discretion will be found when there is insufficient questioning to produce some basis for defense counsel to exercise a reasonably knowledgeable right of challenge. *Id.*

Shannon contends that he was deprived of a fair and impartial

_____

[1] We note that the facts also reveal the possibility that Shannon consented to the search of the motel room. A search conducted pursuant to valid consent is an exception to the Fourth Amendment's warrant and probable cause requirements. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Shannon's identification of the exact location of the gun in the room may have led the officers to reasonably believe in good faith that Shannon had consented to their entry into the motel room and their seizure of the gun. See *United States v. De Leon-Reyna*, 930 F.2d 396, 399 (5th Cir. 1991) (noting that a search is valid if the officers' belief that they had consent, in light of all the circumstances, was objectively reasonable).

8

jury by the remarks of the district court judge in the presence of the venire panel to Juror James Edward Crawford, Jr. (Crawford). He argues that the remarks had a chilling effect on the candor of the rest of the venire panel, so that they were unwilling to admit to partiality and to answer honestly the questions posed by the court during the rest of voir dire. Therefore, it was impossible to gain the necessary information to intelligently exercise his peremptory strikes.

After advising the venire panel of the charges against Shannon, the district court asked if there was anyone who could not serve as a fair and impartial juror. Crawford informed the court that he had been a victim of two robberies and did not think that was fair. He stated that he felt that any person who comes to trial is guilty of something. In response, the court remarked:

> Well, I don't think that is right and I didn't ask you for that answer...That is an unfair thing for you to say. If you can't serve you can't serve. You will report back upstairs and I will let them know about you and you are excused at this time but I admonish you if you answer a question in another courtroom just answer the question...And don't volunteer an answer.

Shannon did not object to the court's remarks to Crawford until after the court finished its direct questioning of the panel, when he requested the court to order a new venire panel. The district court denied his request.

In *United States v. Colabella*,[2] a case factually similar to ours, the Second Circuit refused to speculate about possible jury

---

[2] 448 F.2d 1299 (2d Cir. 1971), *cert. denied*, 405 U.S. 929, 92 S.Ct. 981, 30 L.Ed.2d 803 (1972).

9

bias, holding that the district court's chastising remarks towards several venirepersons who appeared to voice their bias in order to get out of jury duty did not result in a violation of the defendant's Sixth Amendment rights. *Colabella*, 448 F.2d at 1302-03. The same reasoning applies in this case. We find that the court's remarks in front of the venire panel to Crawford did not deprive Shannon of a fair and impartial jury. Therefore, we hold that the district court did not abuse its discretion in refusing Shannon's request for a new venire panel.

### COLLATERAL ATTACK OF PRIOR CONVICTION

The district court will ordinarily entertain a challenge to a prior state conviction in a sentencing hearing if it does not appear that the defendant has an alternative remedy through which to challenge the conviction. *United States v. Canales*, 960 F.2d 1311, 1317 (5th Cir. 1992). However, even if it is determined that the defendant does not have an avenue besides the sentencing hearing or a subsequent proceeding pursuant to 28 U.S.C. § 2255, the court may exercise its discretion to decide whether to hear a challenge to the prior conviction. *Id.* Therefore, the standard of review to be applied by the reviewing court is one of an abuse of discretion.

Shannon contends that a 1987 state court conviction for attempted burglary, which qualified him as a career offender under the Sentencing Guidelines, was invalid because his guilty plea was involuntary; the plea colloquy was inadequate; and exculpatory evidence surfaced concerning Shannon. Shannon moved to invalidate

10

the 1987 conviction.  Relying on this Court's opinion in *United States v. Canales*,[3] the district court declined to entertain the collateral challenge to the 1987 conviction.

The district court's decision was based on its finding that Shannon possessed alternative means for relief in state court; notions of comity favored deferring to the state court; the alleged invalidity was not apparent from the record and the challenge was likely to be contested; and the names and availability of witnesses were uncertain.  In *United States v. Canales* this Court held:

> Where the issue is contested and its resolution not clearly apparent from the record, discretion should normally be exercised by declining to consider the challenge to a conviction by another court if the defendant has available an alternative remedy (apart from a later section 2255 proceeding in the then sentencing court itself).

*United States v. Canales*, 960 F.2d at 1316.  The district court's finding that Shannon maintained the alternative remedy of filing state habeas petition pursuant to Article 11.07 of the Texas Code of Criminal Procedure was not clearly erroneous.  Therefore, we hold that the district court did not abuse its discretion in disallowing Shannon's challenge to the 1987 state court conviction.

POSSESSION/USE OF FIREARM

Shannon contends that the Government failed to prove beyond a reasonable doubt that he used a "dangerous weapon" in committing Counts 1, 2, and 3.  However, because Shannon failed to renew his motion for judgment of acquittal at the close of the evidence, he

---

[3] 960 F.2d 1311, 1315 (5th Cir. 1992).

has waived any objection to the motion's denial. *United States v. Knezek*, 964 F.2d 394, 399-400 (5th Cir. 1992). Therefore, the standard of review is restricted to whether there has been a "manifest miscarriage of justice." *Id.* Shannon's conviction may be reversed only if "the record is 'devoid of evidence pointing to guilt.'" *United States v. Singer*, 970 F.2d 1414, 1418 (5th Cir. 1992).

We have reviewed the evidence in this case. We find that there is substantial evidence to support the conviction on Counts 1, 2, and 3. Having found no manifest miscarriage of justice, we affirm Shannon's conviction on Counts 1, 2, and 3.

CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

12