# REVISED

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 96-40346

---

UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

DON CHARLES ROWE; CHARLIE McDOUGAL;
ROGER WILEY,

                                                            Defendants-Appellants.

---

Appeal from the United States District Court
for the Southern District of Texas

---

February 25, 1997

Before HIGGINBOTHAM, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

I

This is an appeal from a judgment of conviction, entered on a jury verdict finding three defendants guilty of conspiracy to distribute cocaine and marijuana. On the evidence presented, the jury could have found that an organization headed by Humberto Luna-Diaz transported over 500 kilos of cocaine and 2 tons of marijuana to cities in Texas, Florida, and Indiana. Defendants Don Rowe, Charlie McDougal, and Roger Wiley were truck drivers recruited by Luna-Diaz and George Null, his lieutenant. Luna-Diaz would procure the drugs, and Null would coordinate the work of the truck drivers. When law enforcement closed in, Luna-Diaz pleaded guilty to conspiracy and cooperated with the government. In return the government dropped various charges and supported

his bid for a three-level reduction in his sentence. The three truck drivers were convicted of conspiracy and one, Rowe, was also convicted of possession with intent to distribute.

Defendants' main argument focuses on the selection of the jury. They urge that their rights to strike members of the venire peremptorily and to challenge for cause were denied by certain statements the trial judge made that frightened the venire into silence; that the dumbed panel made meaningless the limited *voir dire* of the judge.

## II

A trial judge has broad discretion over the manner in which *voir dire* is conducted. We review only for a clear abuse of discretion. *United States v. Shannon*, 21 F.3d 77, 82 (5th Cir.), *cert. denied*, 115 S.Ct. 260 (1994). Although the trial judge may refuse to allow counsel to address the panel directly, the panel must be examined and the questioning of the panel by the trial judge must be sufficient. *Id.* Indeed a trial judge who chooses to conduct all the examination personally has "a serious duty" to ferret out actual bias. *Dennis v. United States*, 339 U.S. 162, 168 (1950).

## III

At the commencement of *voir dire*, the district judge introduced herself and the other members of the court staff. She next asked who among the panel had failed to appear. Given a name, she told the U.S. Marshal, "I will issue a warrant to have you pick up [that person], have her brought before this court, and have her show cause why she should not be held in contempt, fined, and/or imprisoned for her nonappearance. . . . Now, aren't you all [members of the panel] glad you appeared?" The record reflects no response.

The district court next gave the panel some preliminary instructions. She explained:

> We all know that we're influenced by our experiences in life. We come to hold our differing views very dear, and it's part of what makes our country great, is that we have many of us very differing views. However, if it should be a fact that you hold some view or opinion which you could not in honesty say you would be able to put aside in your consideration of the evidence in these cases, it would be your duty to reveal this state of mind when the jury is being selected.

The court explained the mechanics of *voir dire* to the panel and proceeded to question potential jurors.

One potential juror approached the bench and told the court she did not think she could be fair and impartial because her brother was an undercover narcotics officer and her father was a police officer. This exchange ensued:

> Court: Are you telling me that you cannot put aside, you cannot follow the order of this court and put aside your personal opinions, and listen to the evidence in this case and render a fair and impartial verdict? Is that what you're saying?
>
> A: No. What I'm saying is that I don't feel that my verdict could be fair.
>
> Court: That's just what I'm asking you. Why not? . . . You're refusing to put aside your personal opinions? Is that what you're telling the court?
>
> A: No, I'm not refusing. I'm just saying that I think that it will affect my decision as far as, you know, as the verdict is concerned.
>
> Court: All right. Put her on February, March and April's panel to come back. And you will be coming back again, and again, and again. . . . And see if you can figure out how to put aside your personal opinions and do your duty to your country as a citizen, because this kind of answer which is clearly made up for the occasion is not really great. You are excused.

Although this exchange took place at the bar, it later became evident that the entire panel heard the exchange when another panel member nonetheless ventured an answer indicating possible bias.

The court next asked whether any other panel members had relatives or friends involved in law enforcement, and whether that relationship would interfere with their ability to be fair and impartial. A second panel member answered that she had a relationship she believed would keep her from being fair and impartial. She explained to the court: "I knew I was going to get myself into trouble when I said that, but, and I don't really know what I should say here, but I feel that . . . if the law enforcement agency has done [enough work] on somebody to get them here in court, they know what they're talking about." Without calling the member of the venire to sidebar and in the presence of the entire panel, the court responded:

> It is appalling, actually, that you would come into a court, and presume that people were guilty because they were standing here charged with a crime. That's not our system. And apparently you will not, or you cannot follow the instructions of the court, so you're excused. Put her back on the jury panel for February, March and April, and perhaps you can take [sic] some remedial constitutional inquiries in the meantime. Does anyone else feel that these people are guilty, without hearing

anything further? Now, I don't want to scare you into not responding. You will not be taken into custody. It is just hard, it's actually hard for me to believe somebody who stands up and says that they believe that because someone's sitting here that they're guilty already.

Twice thereafter the court asked the panel if anyone else would be unable to follow the court's instructions that the indictment was not evidence of guilt; no panel member responded.

At the end of *voir dire*, defense counsel moved to strike the panel on the grounds that in light of the court's treatment of the two members of the venire who stated their views, other potential jurors were unlikely to speak up and tell the truth about potential bias for fear of the court's reaction.[1] When the court noted that the first panelist was questioned at the bench, defense counsel pointed out that the entire venire was watching and could hear the exchange. The district court then attempted to undo the damage. She asked the remaining members of the panel: "did anybody hear the exchange between the court and that young woman? . . . Anyone at all? . . . Is there anyone else, was there anyone, and please raise your hand, that was frightened by the court, to where you didn't want to answer any questions along those lines? Anybody in the courtroom please raise your hand. You get free responses to this. No sanctions." No hands were raised, and the motion was denied.

After defendants were convicted but before sentencing, McDougal's counsel moved the court to amend his motion for a new trial, proffering the testimony of a member of the venire panel who approached him in a restaurant some weeks after *voir dire*. According to counsel, the panelist was prepared to testify that after the court's sidebar exchange with the potential juror who reported bias, she "felt like she had no recourse but to sit there and keep her mouth shut, and that was the best thing

---

[1]Appellants also complain about the manner in which the court admonished defendants' counsel during *voir dire*:

Court:          First of all, when you address the Court, you stand. Second of all, don't ever interrupt the Court in jury qualification.

Counsel:     I'm sorry.

Court:          You're here by tolerance only. Don't ever do that again. Sit down. Ask the questions when its over.

4

she could do." Counsel objected "that the jury panel that was impaneled was improperly impaneled because the court intimidated the venireman [sic] into silence. And this lady's testimony would support that contention." The court denied the motion to amend and denied the motion for new trial.

IV

In *Shannon*, we found no abuse of discretion where the district court refused to dismiss the venire panel following remarks that defendant contended made panel members "unwilling to admit to partiality and to answer honestly questions posed by the court during the rest of *voir dire*." *Id.* at 82. The district court there remarked:

> Well, I don't think that is right and I didn't ask you for that answer . . . That is an unfair thing for you to say. If you can't serve you can't serve. You will report back upstairs and I will let them know about you and you are excused at this time but I admonish you that if you answer a question in another courtroom just answer the question . . . and don't volunteer an answer.

*Id.* This case differs from *Shannon* both in kind and in degree. There was but one objectionable remark to the *Shannon* panel. It was in response to a juror so excited to tell the judge about his bias, or escape jury duty, that he answered questions before the court even asked them. And although the district court in *Shannon* admonished the potential juror not to "volunteer an answer," the potential juror was excused without further sanction.

We presume that potential jurors answer truthfully the questions of *voir dire*. *See, e.g., United States v. Droge*, 961 F.2d 1030, 1036 (2d Cir.), *cert. denied*, 506 U.S. 1003 (1992). This assumption does not hold, however, when jurors are given reason to fear reprisals for truthful responses. Each panel member responding affirmatively to the court's questions about bias was accused by the court of refusing to follow instructions and attempting to avoid jury service, and then sanctioned. The district court's message was clear: remarks such as "you will be coming back again, and again, and again . . . and see if you can figure out how to put aside your personal opinions and do your duty to your country as a citizen" can be interpreted only as punishment for responding in the affirmative to questions about bias. The fact that the court got no response when it later asked

5

the panel whether anyone had been intimidated is not surprising; we can also presume that members of the panel are not fools.

The trial court's actions in this case cut off the vital flow of information from venire to court. Responses from panel members of the kind that "defendants must have done something to be where they are" may offend the ideal that defendants are presumed innocent, but such responses are far from dishonest or even atypical. The responses from the two panel members offered the district court an opportunity to remind the entire panel that an indictment is the procedural device for commencing a criminal trial. Defendants' counsel had ample reason to disbelieve the remaining panel members' silence and rote nods in response to the court's attempted remedial questions. The district court simply lost any opportunity to explore panel members' views and educate them. And it became impossible for counsel to get the information from potential jurors necessary for jury selection. We can only conclude that the district court abused its discretion in not dismissing the panel on motion of the defense counsel.

We need not explore the dimensions of the prejudice of the jury selection process here. "Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury." *Gomez v. United States*, 109 S.Ct. 2237, 2248 (1989). Defendants need not show specific prejudice from a *voir dire* procedure that cut off meaningful responses to critical questions. Ironically, the only two members of the venire who spoke up disclosed views that absent explanation or retreat disqualified them from service. We must reverse the convictions.

V

We do not reach defendants' remaining contentions. Those issues are unlikely to recur in a second trial. The judgment of the trial court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

6