**Reversed and Remanded and Majority and Concurring Opinions filed May 5, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00855-CR

---

**ALISHA MARIE DRAKE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 12CR0922**

---

## M A J O R I T Y   O P I N I O N

Following a jury trial, appellant Alisha Marie Drake was found guilty of the second-degree felony offense of sexual performance by a child, younger than fourteen years of age. Because the trial judge's actions and remarks during the selection of the jury prevented a fair and impartial trial, we reverse and remand for a new trial.

BACKGROUND

On February 24, 2012, Jason Grant sexually assaulted his fourteen-month-old granddaughter at his house. Drake videotaped the assault on a cell phone and her voice could be heard on the video. When the police interviewed Drake, she admitted that she used her phone to videotape the assault. Drake told the police that Grant made her do it.

On May 17, 2012, Drake was charged by indictment with sexual performance by a child, younger than fourteen years of age. *See* Tex. Penal Code § 43.25. Drake pleaded not guilty to the allegation and the case proceeded to a trial by jury on August 26, 2013. During the voir dire examination of the jury panel, the trial judge introduced herself to the panel and provided a brief overview of the jury selection process and trial. The trial judge then allowed the prosecutor, Mr. Adam Poole, to begin asking the panel questions.

Mr. Poole began by asking the jurors about potential schedule conflicts and then started explaining that the case involved the charge of sexual performance by a child. The following exchange then occurred:

Mr. Poole: The Judge already mentioned this, but we are going to be talking about some personal things, and it might be some things that you don't feel comfortable talking about in front of everybody. If you do, just make sure I get your number, say, "I would like to say it in private" or "I would like to say it to the Judge." We are going to wait until both sides do our questioning and then we will call you up and then you will just have to talk about it in front of a few of us.

Before I explain to you -- the charge is sexual performance of a child. Before I explain what that is, because there is quite a bit of explanation to that, the short answer is we are talking about creating child pornography. So you can imagine that if this is a trial

2

about creating child pornography, there is a good chance that if you are on the jury, you are going to have to look at child pornography. The immediate -- all at once I saw simultaneous heads shaking. Nobody wants to do that, and there is nobody that's going to do that without being affected by it. And, again, that's okay. It's expected. But if you are on this jury, you have to be able to do it. You cannot be excused just because it affects you and it horrifies you to see that. If so, like the Judge said, we would have no one on that jury. So this is a really sincere question, is that: Are you physically and emotionally incapable of doing that?

The Court: Mr. Poole, don't ask that question because it doesn't matter. I'm not going to excuse anybody for it.

Mr. Poole: Okay.

Yes, sir? Thank you for saving me with a question. Juror No. 48?

Juror No. 48: Yes. I just want to say one thing as far as my belief in God, as far as watching any kind of child pornography for a judicial or whatever kind of court. I mean, I cannot do that, so whatever you have to do, you just have to do it.

Mr. Poole: Are you saying it's a religious reason?

Juror No. 48: Yes. And as far as any kind of case, any kind of child pornography or any of that, I mean, I will close my eyes, I will not allow my eyes to look at anything like that, period. So whatever you have to do, you just have to do it.

The Court: Here is the thing you have got to understand. Assuming -- sometimes an accusation is made and the person didn't commit a crime at all. They are wrong. The crime wasn't committed. Sometimes an accusation was made and a crime was committed but it was a different person that committed it. There are different things that happen. But if you believe that a crime was committed and a child was hurt as a consequence, that child needs 12 people who have got it in them to come in here and look at the

3

evidence and do what - - if you believe in God, God wants you to protect the children.

. . .

And if this happened, then there is a child who needs 12 adults to be big enough and strong enough to watch what they had to go through. So if that kid had to go through that, then adults can watch a film.

. . .

So if it grosses you out, then you can take it out on the person in punishment because it can't possibly gross you out more than it grossed out that child. So that's what my God tells me.

. . .

So you want to find out what I will do? You will find out what I will do. If you get on this jury and I order you to look at something, you will get yourself locked up. So you want to find out what my God will tell me to do? Let's test it, Buddy. Let's test it.

| | |
|---|---|
| Juror No. 48: | Your Honor, I'm one of Jehovah's Witnesses and I believe that Jehovah God is a Supreme Judge and it is not in my place to judge anyone else or to have, for that matter, for them to be - - |
| The Court: | All right. I understand that. We have Jehovah's Witnesses all the time. But you know what? If you get picked on this jury, you get picked on this jury, and Jehovah can visit you in the jail. |
| Juror No. 48: | Okay. Then - - |
| The Court: | Have a seat, sir. |
| Juror No. 48: | I guess they have to visit me. |
| The Court: | All right. Arrest him. Take him into custody. Take him into custody right now. I'm not playing. See you later. |

The trial judge immediately had Juror No. 48 arrested in front of the entire jury panel.

4

Subsequently, another juror inquired about the situation with Juror No. 48, stating "I believe the Judge said you are looking for people to be fair. You have a room full of 65 people. If someone has really strong feelings . . . ." The trial judge cut the juror off and explained the difficulty in selecting a jury for this type of case. The trial judge stated that she used to be a sex crimes prosecutor and that she "had a room this full on these kind of cases and not had enough to get to 12." The trial judge then went into a detailed history of high-profile cases she presided over in the past to illustrate why getting twelve jurors was so challenging. The trial judge concluded by stating the following:

> I know it seems like crazy, but what we don't want to do is, what we hate to do is when we bring this many people in and it wasn't enough and we have to start over again the next day with a whole other group of people. If we could let people go, we would let people go, but we are not. And I'm not playing, and I don't care if anybody likes it or not. That's what we have to do and we are going to do that to pick this jury.

Drake's trial counsel did not object to the trial judge's remarks or the decision to arrest Juror No. 48. Mr. Poole resumed voir dire and the trial judge did not further address the situation with Juror No. 48. Mr. Poole did not ask any more questions regarding the jury's bias or feelings toward child pornography. Similarly, Drake's trial counsel also did not ask the jury any questions regarding child pornography. Voir dire concluded the following day and trial began. The jury returned a verdict of guilty on August 30, 2013.

### ANALYSIS OF APPELLANT'S ISSUES

In her first two issues, Drake contends that the trial court committed fundamental error by arresting a prospective juror in front of the jury panel and by expressing its personal opinions and commenting on the punishment that should be

imposed.[1] Drake asserts that the trial judge's actions and remarks during voir dire deprived her of a fair and impartial jury during trial.

**Error Preservation**

Generally, to preserve error, a defendant must make a timely and specific objection and obtain a ruling. Tex. R. App. P. 33.1(a). Absent an objection, a defendant waives error unless the error is fundamental—that is, the error creates egregious harm. *Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Villareal v. State*, 116 S.W.3d 74, 85 (Tex. App.—Houston [14th Dist.] 2001, no pet.). This exception applies where the error is so egregious and created such harm that the defendant has not had a fair and impartial trial. *Ganther*, 187 S.W.3d at 650 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). In that instance, reversible fundamental error occurs and can be raised for the first time on appeal. *See id*. Because Drake failed to make timely and specific objections during voir dire, the only way her claim survives on appeal is if the trial court's actions and comments constitute fundamental error.

**Sixth Amendment Right to an Impartial Jury**

The Sixth Amendment to the United States Constitution guarantees a trial before an "impartial jury." U.S. Const. amend. VI. A defendant's right to a trial before an impartial jury is ingrained within our fundamental precepts of justice. *Armstrong v. State*, 897 S.W.2d 361, 368 (Tex. Crim. App. 1995) (citing *Irvin v. Dowd*, 366 U.S. 717, 721 (1961)); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). The voir dire process is designed to effectuate a defendant's right to a fair trial by insuring, to the fullest extent possible, that the jury will be intelligent and

---

[1] Although Drake addresses these issues separately in her brief, we consider them together in our analysis.

impartial. *Armstrong*, 897 S.W.2d at 368; *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978). "The importance in selecting a jury cannot be overestimated in our judicial system since both the State and defendant have an interest in assembling a jury free of bias and prejudice." *Price v. State*, 626 S.W.2d 833, 835 (Tex. App.—Corpus Christi 1981, no pet.). Thus, we must determine whether the trial judge's actions and remarks cut off the vital flow of information from the jury to the court in such a way that it prevented Drake from having a fair and impartial trial. *See id.*; *United States v. Rowe*, 106 F.3d 1226, 1230 (5th Cir. 1997).

In this case, Juror No. 48 stated that his religious beliefs prevented him from viewing certain evidence. "The Bill of Rights of the Texas Constitution addresses the importance of religious beliefs and the significance of the jury system." *Price*, 626 S.W.2d at 835. "The religious beliefs of all Texas citizens have not only been guaranteed by the Constitution of this State, but our founding fathers who established this nation did so in the same premise." *Id.* (explaining the importance of jurors being able to serve on juries without being disqualified because of their religious beliefs).

The issue of jurors expressing their religious beliefs during jury selection was briefly addressed by the Court of Criminal Appeals in *Nelson v. State*, in which a trial judge criticized and excused a minister for stating that he could not judge another person's guilt. 661 S.W.2d 122, 124 (Tex. Crim. App. 1983). The majority held that the defendant did not preserve error; however, in a concurrence, Justice Teague pointed out that jurors being patronized for their religious views was a recurring event throughout the State that could not be condoned in our judicial system. *Id.* at 124−25 (Teague, J., concurring). The concurring justice further stated:

7

The religious beliefs of the citizens of the State of Texas, whatever they might be, are far too important to be subjected to mockery, derision, ridicule, or criticism by any member of the trial judiciary of this State . . . I pray that this is the last time I will ever read in an appellate record, or elsewhere, where a citizen of this State has been castigated by a member of the trial judiciary of this State because of his religious beliefs. If what happened in this cause happens again, and a conviction results and is appealed to this Court, I will be the first to vote for a reversal of that conviction, solely for that reason and no other.

*Id*. at 125. Unfortunately, the facts of our case demonstrate that this problem happened again.

**Fundamental Error**

Drake contends that the trial judge's decision to arrest Juror No. 48 and her comments on the case had a chilling effect on the jury that prevented a meaningful and substantive voir dire, which ultimately precluded Drake from having a fair and impartial trial. We agree.

The voir dire process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. *Salazar*, 562 S.W.2d at 482. The purpose of the voir dire examination is to expose any bias or interest of the prospective jurors which might prevent full consideration of the evidence presented at the trial. *Price*, 626 S.W.2d at 835. The term "voir dire" literally means "to speak the truth." *Id*. (quoting Black's Law Dictionary 1412 (5th ed. 1979)). "When one member of the panel does indeed speak the truth and exposes a personal bias, the interests of justice are served." *Price*, 626 S.W.2d at 835. We presume that potential jurors answer truthfully the questions of voir dire. *Rowe*, 106 F.3d at 1229. However, this presumption does not apply when jurors are given reason to fear reprisals for truthful responses. *Id*.

Punishing a juror for speaking truthfully and expressing his bias has a chilling effect on the jury's ability to respond affirmatively to questions asked during voir dire. *See Price*, 626 S.W.2d at 835 (stating that the trial judge's comment on juror's religious beliefs "cannot help but chill the honest exchange of information so necessary in the selection of a fair and impartial jury"). We find support in *Rowe*,[2] a case in which a juror told the judge that she could not be fair in a drug case because her brother was an undercover narcotics officer and her father was a police officer. 106 F.3d at 1228. In retaliation for the juror's response, the judge stated that the juror was going to be placed on jury panels in February, March, and April so that she could "figure out how to put aside [her] personal opinions." *Id*. The exact same encounter occurred between the judge and one other juror, and resulted in the same threat of punishment. *Id*. at 1228−29. The *Rowe* court held that because the jurors were punished for responding truthfully about their biases, the trial judge's actions "cut off the vital flow of information from venire to court." *Id*. at 1230. The court reasoned that the "district court simply lost any opportunity to explore panel members' views and educate them" and as a result it "became impossible for counsel to get the information from potential jurors necessary for jury selection." *Id*.

The facts of *Rowe* are analogous to the present case in which the trial judge's act of arresting Juror No. 48 chilled the effect of the jury's ability to provide truthful responses to questions regarding their potential biases. We cannot condone the trial judge's action in this case. A trial judge that holds a juror in contempt for expressing his religious beliefs defeats the purpose of voir dire and prevents the honest exchange of information between the court and the jury. *Price*,

---

[2] Although Fifth Circuit precedent is not binding on Texas courts, we recognize that federal court opinions may be persuasive authority. *See Guzman v. State*, 85 S.W.3d 242, 249 n.24 (Tex. Crim. App. 2002).

9

626 S.W.2d at 835−36 ("If a trial court discourages prospective jurors from being truthful, he simultaneously destroys the purpose of the voir dire and erodes the foundation upon which a fair and impartial jury can be selected.").

The State asserts that the trial judge's act of arresting Juror No. 48 was proper because the trial judge exercised its discretion to maintain control over the courtroom. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002) (stating that the trial court has broad discretion over the process of selecting a jury). The State contends that Juror No. 48 was disrespectful, disorderly, and "adamant that he was ready to be arrested." Although we recognize the trial judge's broad discretion over voir dire, nothing in the record demonstrates that Juror No. 48 behaved disrespectfully or was disorderly toward the court. Even if Juror No. 48's tone was disrespectful, it is a judge's role to maintain decorum without resorting to personal argument. This record reflects that the trial judge engaged Juror No. 48 personally, thereby at least continuing, if not escalating, the angry tone of the exchange. It certainly cannot be said that Juror No. 48 actually wanted to be arrested. Instead, Juror No. 48 affirmatively responded to Mr. Poole and the trial judge's questions regarding the jurors' views on child pornography.

The State directs this court to *Villegas v. State*, a case in which a juror was held in contempt during voir dire. No. 04-07-00109-CR, 2008 WL 441755, at *1 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (mem. op.) (not designated for publication). In *Villegas*, the prosecutor asked the jury "[w]hat does a person look like who has committed child abuse?" *Id*. A juror stood up and said "[s]omething like him" and pointed to the defendant. *Id*. The defense counsel objected, stating that the juror's outburst tainted the jury pool. *Id*. The trial judge found the juror in contempt and the juror was handcuffed and removed from the courtroom. *Id*. The defense counsel again objected to the juror's outburst and requested a ruling. *Id*.

10

Another juror then stated "if they look guilty they are guilty" and the defense counsel again objected and moved for a mistrial. *Id*. On appeal, the defendant argued that the jurors' comments tainted the panel members who ultimately served on the jury. *Id*. The court held that the record was "devoid of evidence that any juror on the panel was prejudiced" and that the trial court did not abuse its discretion in denying the defendant's motion for mistrial. *Id*. at *2−3. We disagree with the State that *Villegas* should apply because it is factually distinct.

First, a juror being held in contempt for saying the defendant looked like a child abuser is completely different from the present situation, in which Juror No. 48 was held in contempt for expressing his possible bias grounded in religious beliefs. A trial court has the discretion to arrest a disruptive juror for causing an outburst during voir dire, but abuses that discretion when it arrests a juror for speaking honestly about his inability to hear a case impartially. *See Rowe*, 106 F.3d at 1230.

Second, in *Villegas*, the record did not reflect that any juror was prejudiced or tainted by the arrested juror's remarks. 2008 WL 441755, at *2. Here, the record demonstrates that the jury was intimidated into silence by the exchange between the trial judge and Juror No. 48. After the exchange with Juror No. 48 occurred, one juror expressed his concern about the situation and was immediately interrupted by the judge. The trial judge then clearly explained that it would not be excusing any juror who had biases regarding child pornography. Subsequently, the discussion on child pornography during voir dire came to a halt and the jurors remained silent on the issue. After one arrest and a subsequent, similar admonishment, we can only presume that the members of the panel were "not fools." *See Rowe*, 106 F.3d at 1230. Instead of preserving the impartiality of the jury, the trial judge was more concerned with the personal argument with Juror No.

11

48 and making sure there were twelve people available to serve on the jury from that particular panel, regardless of any disqualifying biases regarding certain evidence. The trial judge went into a lengthy discussion of the difficulty of selecting a jury based on personal experience with these types of cases. The trial judge made it very clear that she would not be dismissing any juror with potentially disqualifying bias against viewing certain types of evidence when she stated "[i]f we could let people go, we would let people go, but we are not. And I'm not playing, and I don't care if anybody likes it or not." The trial judge's comments demonstrate a failure to protect the jury selection process.

Along with holding the juror in contempt, the trial judge's comments about Drake's case and punishment undoubtedly influenced the jury's opinion about the case before it even began. The trial judge stated "if you believe in God, God wants you to protect the children" and if a "kid had to go through that, then adults can watch a film." While arguing with Juror No. 48, the judge also commented on punishment, stating "if it grosses you out, then you can take it out on the person in punishment because it can't possibly gross you out more than it grossed out that child. So that's what my God tells me."

The Texas Code of Criminal Procedure provides that a judge cannot "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." Tex. Code Crim. Proc. art. 38.05. The trial judge must maintain impartiality throughout the entire case. *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (plurality op.). The *Blue* court recognized that the United States Supreme Court has stated, "[i]t is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." *See id*. (quoting *Starr v.*

*United States*, 153 U.S. 614, 626 (1894)). Here, the trial judge's comments to the jury did not reflect impartiality toward Drake's case. The trial judge also made improper comments regarding punishment when it told the jury to "take it out on" Drake during punishment.

The trial judge's act of arresting Juror No. 48 combined with her comments during voir dire rise to the level of fundamental error. Where error defies harm analysis or the data is insufficient to conduct harm analysis, the error will not be proven harmless. *Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000); *see also Rios v. State*, 4 S.W.3d 400, 404 (Tex. App.—Houston [1st Dist.] 1999), *pet. dism'd, improvidently granted*, 122 S.W.3d 194 (Tex. Crim. App. 2003) (per curiam) ("We believe this harm from this error . . . defies analysis, even though we have been ordered to analyze it and have tried to."). Because determining what effect the trial judge's actions and remarks had on the jury would leave this court to speculate, Drake does not need to point to specific prejudice. *See Rowe*, 106 F.3d at 1230 ("Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury. Defendants need not show specific prejudice from a *voir dire* procedure that cut off meaningful responses to critical questions.") (internal quotations and citations omitted).

However, even if Drake was required to show actual harm, the record reflects that the jury was intimidated by the encounter between the trial judge and Juror No. 48. After the arrest, a juror stated "I believe the Judge said you are looking for people to be fair. You have a room full of 65 people. If someone has really strong feelings . . . ." This statement shows that at least one juror was concerned about the jury being able to freely share their biases with the court. When the judge interrupted this juror, it is not surprising that the jury remained

silent, fearing that he or she could be arrested for speaking truthfully. *See id.* (noting that jury's silence after judge punished two jurors suggested that jury feared giving truthful answers).

We cannot overemphasize the importance of a litigant's constitutional right to a trial before an impartial jury. The facts underlying the alleged offense in this case are horrible. But the the trial judge's decision to arrest a juror for speaking truthfully about his bias and the trial judge's decision to comment on Drake's case leave us with no other option but to reverse the conviction. The trial judge's actions failed to protect the trial process and deprived Drake of a fair and impartial trial.

We sustain Drake's first and second issues. Because we find these issues dispositive, we need not reach Drake's remaining issue.

## CONCLUSION

We hold that the trial judge committed fundamental error. Accordingly, we reverse the conviction and remand the case for a new trial.


/s/     Ken Wise
        Justice


Panel consists of Justices McCally, Brown, and Wise (McCally, J., concurring). Publish — TEX. R. APP. P. 47.2(b).