

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| ALBERTO MONTELONGO, | § | No. 08-16-00001-CR |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | 243rd District Court |
|  | § |  |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC # 20150D02224) |
|  | § |  |

## **O P I N I O N**

A jury convicted Appellant Alberto Montelongo of attempted capital murder of multiple persons and assault with bodily injury of a family member twice within twelve months. A jury sentenced Appellant to confinement for a period of 99 years and 10 years, respectively. On appeal, Appellant raises four issues for our consideration that arise in significant part from the trial court's acts and failure to act. We affirm the trial court's judgment.

## BACKGROUND

Appellant and Blanca Parra met while attending the United States Border Patrol Academy, and eventually married on February 18, 2014. Appellant eventually became a firing-range instructor for Border Patrol, and estimated that he trained between 200 to 500 agents.

In July 2014, Appellant and Parra separated, and their subsequent attempts at reconciliation

failed, in part because Appellant declined to move into the marital home. Appellant had a separate home, and as Parra later learned, a lover.

In December 2014, Parra concluded that she did not want to seek reconciliation and met Jesus Rodriguez through an online website. They first met in January 2015 and went on several dates during that month but never had sexual relations. After her third date with Rodriguez on January 29, 2015, Parra was sleeping in her bed when Montelongo entered her bedroom, and announced that God had told him to "get his woman to submit to him," and that he wanted to reconcile. Appellant became angry when Parra laughed, and when she began looking at her tablet and ignoring Appellant, he grabbed her by the hair, and struck her head against the bed headboard to the extent that Parra thought she would lose consciousness. During the one-minute attack, Appellant informed Parra that she deserved this treatment because she had been unfaithful. Appellant left and went home to his girlfriend.

Parra suffered visible injuries to her face, called the sheriff, and subsequently sought a protective order. Appellant was arrested, and was placed on administrative leave at the Border Patrol, where he surrendered his service weapon.

On the evening of February 2, 2015, after parking his car where Parra could not see it and after observing Rodriguez arrive at Parra's residence, Appellant approached the front door of the house, observed Parra and Rodriguez hug and kiss, and then proceeded to enter the house through the garage where he retrieved a handgun that he stated he had never fired. When Appellant walked within two feet of Rodriguez, Parra walked between them. Appellant asked Rodriguez how many times he had sex with Parra, pulled a gun out of his pocket and, holding the gun with both hands and one finger on the trigger, pointed it at Parra and Rodriguez.

2

When Parra's daughter heard a commotion, entered the kitchen area and saw Appellant holding the gun, and Rodriguez' hands in the air, she returned to her bedroom and called 9-1-1. She eventually escaped through her bedroom window.

Appellant announced that he was going to kill Parra and Rodriguez, closed one eye, aimed, fired the gun, and shot Rodriguez in the head above his right eye. Rodriguez crawled to a nearby bathroom, and Appellant aimed the gun at Parra's sternum, but the gun jammed and misfired. Parra grabbed the gun and as she and Appellant struggled for control of the gun, they entered the kitchen. Appellant released one hand from the gun, and removed a knife from a kitchen drawer. Parra grabbed Appellant's hand that was on the knife, while Appellant attempted to hit the gun on the kitchen counter for the purpose of clearing the jammed round.

After Sheriff's Office personnel arrived, a communications robot was deployed which took a photo of Appellant holding the knife while Parra held his hand that was bearing the knife. Appellant allowed Parra to retrieve a phone that the Sheriff's Office personnel had thrown inside the house, she ran outside.

Rodriguez underwent cranial surgery and bullet fragments remain lodged in his brain. Parra suffered cuts to her hands.

## DISCUSSION

### I.

In Issue One, Appellant contends the trial court abused its discretion by failing to hold a hearing on his motion for new trial. We disagree.

*Motion for New Trial*

A defendant seeking a new trial must present his motion for new trial to the trial court

3

within 10 days after the motion is filed.   TEX.R.APP.P. 21.6.   The presentment must result in actual notice to the trial court and may be evidenced by a hearing date set on the docket.   *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex.Crim.App. 1998).   To be entitled to a hearing on his motion for new trial, a defendant must first request it.   *Rozell v. State*, 176 S.W.3d 228, 230-31 (Tex.Crim.App. 2005).   When a motion for new trial is presented to the trial court, the burden of ensuring that the hearing thereon is set for a date within the trial court's jurisdiction is properly placed on the party presenting the motion, not on the trial judge.   *See Oestrick v. State*, 939 S.W.2d 232, 235-36 (Tex.App.--Austin 1997, pet. ref'd); *Crowell v. State*, 949 S.W.2d 37, 38 (Tex.App.--San Antonio 1997, no pet.).   The trial court must rule on the motion within 75 days after imposing or suspending sentence in open court.   TEX.R.APP.P. 21.8(a).   A motion not timely ruled on by written order within the prescribed 75-day period will be deemed denied.   TEX.R.APP.P. 21.8(c).

"It is the duty of the appellate courts to ensure that a claim is preserved in the trial court before addressing its merits."   *Obella v. State*, 532 S.W.3d 405, 407 (Tex.Crim.App. 2017), *quoting Wilson v. State*, 311 S.W.3d 452, 473 (Tex.Crim.App. 2010).   To preserve a complaint for appellate review, the record must show that the complaining party made a timely motion to the trial court and the trial court ruled on the motion either expressly or implicitly or refused to rule on the motion and the complaining party objected to the refusal.   TEX.R.APP.P. 33.1(a).

In this case, the trial court entered judgment in open court on September 30, 2015. Appellant filed his motion for new trial, which requested a hearing, on October 30, 2015.   On November 19, 2015, the trial court issued an order scheduling the motion to be heard on December 8, 2015.   The scheduling order is evidence that Appellant's motion was presented to the trial court.   *See Carranza*, 960 S.W.2d at 79.

On November 23, 2015, the trial court issued an order canceling the hearing on Appellant's motion for new trial, and facsimile transmission logs show that the order was sent to Appellant's trial and appellate counsel on that date. The record does not show or indicate the reason for the trial court's cancellation of the hearing, nor that the trial court expressly ruled or refused to rule on the motion. The motion for new trial was overruled by operation of law. TEX.R.APP.P. 21.8(b).

In the absence of a record showing appellant's efforts to reschedule the hearing on his motion for new trial, he cannot complain about the overruling of his motion by operation of law. *See Tello v. State*, 138 S.W.3d 487, 496 (Tex.App.--Houston [14th Dist.] 2004), *aff'd*, 180 S.W.3d 150 (Tex.Crim.App. 2005), *citing Johnson v. State*, 925 S.W.2d 745, 748 (Tex.App.--Fort Worth 1996, pet ref'd)(defendant had burden to "develop some record, before the expiration of the court's jurisdiction, which demonstrated his efforts to reschedule the hearing" on his motion for new trial). Nothing in the record on appeal shows that Appellant rescheduled or attempted to reschedule the hearing on the motion for new trial, and Appellant has not developed a record of any effort to reschedule the hearing. "Where a motion for new trial is overruled by operation of law, the trial court's failure to conduct a hearing, without more, is simply a 'failure to rule' on the request for a hearing." *Oestrick*, 939 S.W.2d at 235.

Appellant did not obtain a ruling on his motion for new trial and did not object to a lack of a ruling on his motion. *See Oestrick*, 939 S.W.2d at 235; *see also Baker v. State*, 956 S.W.2d 19, 24-25 (Tex.Crim.App. 1997)(appellant who failed to object to the untimely setting of a motion-for-new-trial hearing within the 75-day jurisdictional period failed to preserve his complaint that the trial judge should have held timely hearing). Consequently, Appellant has failed to preserve this complaint for our review. Issue One is overruled.

5

**II.**

Appellant next complains that his "6th Amendment right to the effective assistance of counsel and his right to due process" were denied, in Issue Two, when the trial court repeatedly threatened to hold defense counsel in contempt, and in Issue Three, when the trial court erroneously held defense counsel in contempt after the conclusion of voir dire. In Issues Two and Three, which Appellant presents together, he contends that after the trial court's contempt ruling, defense counsel "could not effectively represent Appellant due to a conflict of interest between protecting himself and defending Appellant." He asserts that defense counsel did not zealously represent him because defense counsel feared that "he might be fined or jailed or both."

Appellant also argues that defense counsel's performance was ineffective at trial because defense counsel conducted a deficient voir dire that failed to address punishment issues, and failed to present any meaningful punishment evidence, failed to make objections throughout trial, failed to make objections to improper parole arguments during the State's closing punishment argument, failed to make objections to improper non-victim impact evidence, and because he agreed to admit all of the State's proffered exhibits. We first consider whether an actual conflict of interest is shown.

*Ineffective Assistance of Counsel Based on Conflict of Interest*

An actual conflict of interest which adversely affects a lawyer's performance is one way in which a counsel's assistance may be rendered constitutionally ineffective. *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective assistance of counsel due to counsel's conflict of interest, an appellant must show that counsel had an actual conflict of interest, and the conflict actually colored counsel's actions during

6

trial. *Acosta v. State*, 233 S.W.3d 349, 356 (Tex.Crim.App. 2007)(adopting the rule set out in *Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). The appellant bears the burden of proof by a preponderance of the evidence on a claim of conflict-of-interest ineffective assistance, which is to say that if "no evidence has been presented on the issue" or in the event that "the evidence relevant to that issue is in perfect equipoise," the appellant's claim will fail. *Odelugo v. State*, 443 S.W.3d 131, 136-37 (Tex.Crim.App. 2014)(citations omitted).

"[A]n 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Acosta*, 233 S.W.3d at 355, *citing Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App. 1997), *quoting James v. State,* 763 S.W.2d 776, 779 (Tex.Crim.App. 1989). A defendant who did not object at trial must demonstrate by a preponderance of the evidence that an actual conflict of interest adversely affected counsel's performance. *Cuyler*, 446 U.S. at 348; *Odelugo v. State*, 443 S.W.3d 131, 136-37 (Tex.Crim.App. 2014).

A mere possibility of a conflict of interest is insufficient to overturn a criminal conviction. *See Cuyler*, 446 U.S. at 345, 350. In a conflict-of-interest claim, there is a limited presumption of prejudice, i.e., "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692, *quoting Cuyler v. Sullivan*, 446 U.S. at 350, 348, 100 S.Ct. at 1719 (footnote omitted)(until defendant shows counsel actively represented conflicting interests, he does not establish constitutional predicate for claim of ineffective

assistance).   Where no actual conflict of interest exists, we analyze the appellant's ineffective-assistance claim under the *Strickland* test.   *See Acosta v. State*, 233 S.W.3d 349, 355-56 (Tex.Crim.App. 2007); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Contempt and Threats of Contempt*

The trial court held defense counsel in contempt at the conclusion of voir dire, but did so after the twelve jurors selected to hear Appellant's case had left the courtroom, and while the judge was speaking to the venirepersons who remained present in the courtroom.   On the third day of trial, the trial court sustained the State's objection when defense counsel asked Blanca Parra during cross-examination, "If I shoot a weapon . . . like he did that day, and he approached him, he was pointing the weapon, and I would have grabbed the weapon, then that muzzle would be hot?" After the trial court sustained the objection, defense counsel immediately asked Parra, "Correct?," and the trial court again stated, "Sustained."   When Defense counsel noted to the trial court, "That's my theory, Judge," the trial court replied, "Sustained, Mr. Cervantes."   Defense counsel asked Parra, "[Y]ou're saying that at that time -- was the muzzle hot or not?," and Parra stated that she did not remember.   Defense counsel again asked whether the gun was hot, the State objected, and the court again sustained the State's objection.   When defense counsel subsequently asked Parra, "And you're telling the jury that you don't know whether the muzzle was hot or not?," the trial court instructed counsel to approach and advised defense counsel, "I sustained that question two times.   The next one, hold you in contempt, and I will.   I'm telling you right now, I'm going to find you in contempt.   Do you understand me?"

Two days later, on the fifth day of trial, after the State had passed a State's witness for

8

cross examination, the trial court instructed the prosecutor to return the exhibits to the court's reporter, instructed defense counsel to sit down, and thereafter informed defense counsel that he was permitted to proceed. Defense counsel did not cross-examine the witness, a person who Parra had met on an internet dating website. After excusing the witness, the trial court instructed counsel to approach the bench, and then instructed defense counsel, "Mr. Cervantes, next time I repeat an instruction to you I'm holding you in contempt, and don't plan on going home. This is your third admonishment. Do it again, you're not going home."[1] When defense counsel asked, "You don't want me to stand at all?," the trial court informed trial counsel, "I have told you six times today, wait until [the prosecutor] sits down. Okay. You insist on jumping up and going to the podium. It's going to cost you. Do you understand?" Defense counsel acknowledged that he understood the trial court's instruction.

*Analysis*

To support his contentions, Appellant relies on the affidavit he filed in support of his motion for new trial. However, in addressing Issues Two and Three, we do not consider the affidavits Appellant filed in support of his motion for new trial.

A motion for new trial is not self-proving. *Rouse v. State,* 300 S.W.3d 754, 762 (Tex.Crim.App. 2009); *Jackson v. State,* 139 S.W.3d 7, 20 (Tex.App.--Fort Worth 2004, pet. ref'd), *citing Lamb v. State,* 680 S.W.2d 11, 13 (Tex.Crim.App. 1984). During a hearing on a motion for new trial, a trial court may receive evidence by affidavits. TEX.R.APP.P. 21.7; *Jackson,* 139 S.W.3d at 20. However, an affidavit attached to the motion is merely "a pleading that authorizes the introduction of supporting evidence" and is not evidence itself. *Dugard v.*

---

[1] Appellant's brief does not direct us to a third admonishment in the record, and we have found none.

*State,* 688 S.W.2d 524, 528, 529 (Tex.Crim.App. 1985), *overruled on other grounds by Williams v. State*, 780 S.W.2d 802, 803 (Tex.Crim.App. 1989); *Jackson,* 139 S.W.3d at 20, *quoting Stephenson v. State,* 494 S.W.2d 900, 909-10 (Tex.Crim.App. 1973). To constitute evidence, the affidavit must be introduced as evidence at the hearing on the motion. *Rouse,* 300 S.W.3d at 762; *Stephenson,* 494 S.W.2d at 909-10; *Jackson,* 139 S.W.3d at 20. Because the affidavits in support of Appellant's motion were not introduced in evidence at a hearing, they constitute mere pleadings, and are not evidence. *Jackson,* 139 S.W.3d at 21.

We do not find Appellant's complaints to be well-founded in the trial record on appeal. We find nothing in the record that supports Appellant's contention that the trial court's contempt ruling created an actual conflict of interest between defense counsel's interests and those of Appellant. The trial court's post-voir dire contempt ruling was made outside the presence of the jury at a time when the judge was addressing the non-selected venire panel regarding the importance of jury service. Defense counsel was not advocating on behalf of Appellant and had no advocacy role during the time the trial court addressed the remaining venirepersons after voir dire had concluded and the jury had been selected and removed from the courtroom.

Regarding the trial court's two other contempt admonishments occurring on the third and fifth days of trial, Appellant presents no evidence on the issue to show an actual conflict of interest, that is, that counsel was required to make a choice between advancing Appellant's interest in a fair trial or advancing other interests to the detriment of Appellant's interest. *See Odelugo*, 443 S.W.3d at 136-37; *Acosta*, 233 S.W.3d at 355; *Monreal*, 947 S.W.2d at 564; *James,* 763 S.W.2d at 779. Nothing in the record shows that defense counsel did not zealously represent Appellant because defense counsel harbored fear that "he might be fined or jailed or both" as asserted in

10

Appellant's brief. The record bears no information showing what interest, if any, defense counsel may have had that conflicted with and may have been detrimental to Appellant's interests. Because no actual conflict of interest is demonstrated in the trial record, we analyze the appellant's ineffective-assistance claim under the two-pronged *Strickland* test. *See Acosta*, 233 S.W.3d at 355-56; *Strickland,* 466 U.S. at 687.

*Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, the appellant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2064. The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Whether an appellant received effective assistance of counsel is founded on the facts of each case. *Id.*

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Instead, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Mata v. State*, 226 S.W.3d 425, 430 (Tex.Crim.App. 2007). The defendant must overcome "the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and that the conduct constituted sound trial

strategy. *Prine v. State*, 537 S.W.3d 113, 116-17 (Tex.Crim.App. 2017), *quoting Thompson*, 9 S.W.3d at 813; *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App. 1992).

To defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996). Trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex.Crim.App. 2003).

Courts will not speculate to find counsel ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex.Crim.App. 2012). We presume a reasonable trial strategy if any can be objectively plausible. *Id.* In the absence of evidence of counsel's reasons for the challenged conduct, we commonly will assume a strategic motivation if any can possibly be imagined and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *See Ex parte Saenz*, 491 S.W.3d 819, 828 (Tex.Crim.App. 2016), *quoting Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)(internal citations omitted); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005)(faced with undeveloped record, court should find counsel ineffective only if conduct was so outrageous that no competent attorney would have engaged in it).

To effectively argue an issue of ineffective assistance of counsel, a record focused on the conduct of trial or appellate counsel should be developed. This is often best achieved in the context of a hearing held in relation to an application for writ of habeas corpus. *See Jackson v. State*, 877 S.W.2d 768, 772 n.3 (Tex.Crim.App. 1994)(Baird J. concurring)(noting also that although such record may be developed during a hearing on a motion for new trial, doing so is

most often impractical because of the time constraints under the rules of appellate procedure, and because the trial record generally has not been prepared within the timeframe necessary to permit use of the trial record during the new-trial hearing). The record on direct appeal is generally insufficient to show that counsel's performance was deficient. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002).

*Analysis*

Although Appellant has phrased Issues Two and Three in terms of a denial of right to counsel and due process arising from the trial court's contempt ruling and threats of making additional contempt rulings, he also contends defense counsel's performance was deficient throughout trial. In support of his contention that defense counsel rendered ineffective assistance at trial, Appellant complains that during voir dire, defense counsel failed to address punishment issues, and that during trial defense counsel did not present meaningful punishment evidence, did not object throughout trial, failed to object to improper parole arguments during the State's closing punishment argument and to improper non-victim impact evidence, and also agreed to admit all of the State's proffered exhibits.

Appellant does not specify what punishment issues defense counsel should have addressed during voir dire, nor does he identify what meaningful evidence should have been presented during punishment. Appellant does not specify the objections he believes defense counsel should have made "throughout trial," and does not attempt to specify or direct us to the allegedly improper non-victim impact evidence and punishment arguments to which he suggests defense counsel should have voiced objection. Appellant does not suggest why defense counsel should not have agreed to the admission of the State's proffered exhibits. Moreover, at no time does Appellant attempt

13

to show that defense counsel's allegedly deficient performance prejudiced his defense, and after review, we conclude the record does not affirmatively demonstrate trial counsel's alleged ineffective assistance.

In light of this undeveloped record which does not include trial counsel's explanations for his acts or omissions or his trial strategy, we are unable to conclude that defense counsel's conduct was so outrageous that no competent attorney would have engaged in it. Simply stated, Appellant has failed to meet his burden of proving by a preponderance of the evidence that counsel was ineffective, and has failed to overcome the strong presumption that defense counsel's conduct fell within the wide range of reasonable professional assistance and constituted sound trial strategy. Issues Two and Three are overruled.

## III.

In Issue Four, Appellant complains he was denied his right to a fair and impartial trial when the trial judge admonished prospective jurors who asserted they could not sit in judgment of others, and accused another prospective juror of attempting to avoid jury duty.[2] Appellant asserts that because of the complained-of interactions, jurors were unlikely to answer the litigants' questions in a truthful manner for fear of reprisal by the trial court.

### *Preservation of Error*

To preserve error regarding improper voir dire questions, a party must make a timely, specific objection at the earliest possible opportunity. TEX.R.APP.P. 33.1(a)(generally, to preserve an alleged error for appellate review, the record must show that the complaining party raised the issue with the trial court in a timely and specific request, objection, or motion and

---

[2] The venirepersons with whom the trial court interacted did not serve as jurors at Appellant's trial.

obtained a ruling or objected to the court's refusal to rule); *Ross v. State,* 154 S.W.3d 804, 807 (Tex.App.--Houston [14th Dist.] 2004, pet. ref'd); *see also Griggs v. State,* 213 S.W.3d 923, 927 (Tex.Crim.App. 2007); *McLean v. State*, 312 S.W.3d 912, 915 (Tex.App.--Houston [1st Dist.] 2010, no pet.). However, Texas Rule of Evidence 103(e) provides that, "In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved." TEX.R.EVID. 103(e); *see Jasper v. State*, 61 S.W.3d 413, 420 (Tex.Crim.App. 2001)(where appellant claimed that his right to fair trial by impartial jury was violated by comments of the trial judge, but appellant did not object at trial, it is within province Court to "take notice of fundamental errors affecting substantial rights although they were not presented to the court," pursuant to Texas Rule of Evidence 103(d), now Rule 103(e)); *McLean v. State*, 312 S.W.3d 912, 915 (Tex.App.--Houston [1st Dist.] 2010, no pet.)(applying former Rule 103(d), which provided, "In a criminal case, nothing in these rules precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court.").

As the State correctly observes, Appellant did not object to the trial court's comments during voir dire. TEX.R.APP.P. 33.1(a). Therefore, the alleged error is not preserved for our consideration unless the error was fundamental and affected a substantial right. TEX.R.EVID. 103(e).

The Sixth Amendment to the United States Constitution guarantees a trial before an impartial jury. U.S. CONST. amend. VI. The process of voir dire is designed to effectuate a defendant's right to a fair trial by insuring, to the fullest extent possible, that the jury will be intelligent and impartial. *Armstrong v. State,* 897 S.W.2d 361, 368 (Tex.Crim.App. 1995); *see*

15

*also Barajas v. State,* 93 S.W.3d 36, 38 (Tex.Crim.App. 2002)(trial court has broad discretion over the process of selecting a jury).

In *Blue v. State,* 41 S.W.3d 129, 132 (Tex.Crim.App. 2000)(plurality op.), a plurality of the Court held that a trial judge's comments "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." In *Jasper*, 61 S.W.3d at 421, the Court of Criminal Appeals subsequently determined that even if its plurality opinion in *Blue* was binding, the trial court's comments in *Jasper* had failed to rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." The Court therefore concluded that the trial court's alleged improper comments were not fundamental error. *Id.*

In this case, the trial court questioned Veniremember 5 after she affirmatively answered the State's question which asked whether anyone felt he or she could not "judge the credibility of another" for religious reasons. When asked by the trial court, Veniremember 5 acknowledged that she was serving on a grand jury. The trial court asked whether the juror judged 20-30 people every day during grand jury, noted that this meant she was passing judgment and indicting someone who would stand trial, and asked whether she understood the prosecutor's question and what she does as a member of the grand jury. The juror's response indicated her awareness of her role in the grand jury, and although the trial court had clarified that Appellant's charge was for attempted murder, the juror noted that she had not indicted murder cases. The trial court then commented, "So as long as you don't know the defendant, you don't . . . have a problem passing judgment? Have a seat, ma'am."

After this exchange, Veniremember 40 voiced her feeling that she could not "judge the

credibility" of another. She was followed by Veniremember 51 who also acknowledged an inability to "judge the credibility" of someone. When Veniremember 55 next stood in response to the same question by the State, the trial court interjected:

> Let me -- did you people understand that question? Because it seems to me you pass judgment on people every single day.
>
> Single ladies, let me see your hands. Ever been asked out before in your life? Did you pass judgment? 'He's kind of ugly.' 'Not my type.' 'Doesn't have a car.' Did you not pass judgment on another human being? Now, look, ladies, I'm not saying it's going to be -- you know, have Smiling Jack pick you up and take you to the bus stop, have a nice dinner, McDonalds, come back home. Did you or did you not pass judgment on him? Did you understand the question? Can you judge another person?
>
> Stranger walks up to you. 'I don't' want to talk to you. I don't want to talk to you.' Did you not pass judgment? All right.

The trial court then asked Veniremember 51 whether she understood the question, and she answered, "Yes, sir." When the trial court asked whether she had never passed judgment, Veniremember 51 stated, "I honestly try not to." The trial court asked Veniremember 51 whether she had ever applied for a job and had judged the person interviewing her, and Veniremember 51 repeated that she tries not to judge others. When the trial court noted that it had not asked her whether she tries not to judge others and asked, "You're telling me you can't pass judgment on a human being?" Veniremember 51 stated, "I shouldn't." The trial court asked whether Veniremember 51 passes judgment regarding the manner in which her sister and other women dress. Veniremember 51 answered, "Not my place," and when the trial court asked Veniremember 51 whether she ever passes judgment on the way people act in clubs, she answered, "Yes, sir." The trial court then asked, "Why would you pass judgment on other people? They've got a right to act any way they want in a club. Sit down, 51."

17

Prior to concluding its voir dire, the State asked the venire, "Is there anything or anyone that I missed that would like to address the Court about serving on this jury, before I sit down, that maybe you might not be the appropriate juror for this particular case?" Five veniremembers raised issues, including Veniremember Number 40 who asked whether an inquiry had been made regarding jury service in the preceding 24 months. The State's prosecutor clarified that the trial court had asked the question and noted that the veniremember could approach on that matter later in the proceedings. The trial court asked, "Ma'am, you're not trying to get out of jury, are -- jury duty, are you?" and as Veniremember Number 40 began to answer, the trial court responded, "Then have a seat. Thank you." When defense counsel posed questions of the venire during voir dire, veniremembers responded to questions posed.

In support of his contention that the trial court's comments rendered jurors unlikely to answer the litigants' questions honestly for fear of reprisal, such the comments constitute reversible error that may be raised for the first time on appeal, Appellant directs us to *Drake v. State*, 465 S.W.3d 759, 764 (Tex.App.--Houston [14th Dist.] 2015, no pet.). In *Drake*, our sister court determined that a trial judge's comments on the case and its decision to arrest a veniremember who stated that his religious beliefs prevented him from viewing certain evidence had a chilling effect on the jury that prevented a meaningful and substantive voir dire, which precluded a fair and impartial trial. *Drake*, 465 S.W.3d at 764.

Here, no veniremember was subjected to arrest, sanction, reprisal, or dismissed on religious grounds. The record does not reveal that the trial court's comments had a chilling effect on the jurors or deprived Appellant of a fair and impartial trial. Despite the trial court's comments, veniremembers continued to respond to questions posed by the State and defense counsel during

18

voir dire.

We conclude the trial court's comments in this case did not rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *See Jasper,* 61 S.W.3d at 421. Accordingly, because the trial court's voir dire comments do not constitute fundamental error, Issue Four is overruled.

## IV.

The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). The certification is defective, and has not been corrected by Appellant's attorney or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to Rule 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED, to comply with all of the requirements of Rule 48.4.

## CONCLUSION

The trial court's judgment is affirmed.

August 31, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

19