**Vicki K. SHAPLEY, Appellant,**

v.

**TEXAS DEPARTMENT OF HUMAN RESOURCES (Formerly Texas Department of Public Welfare), Appellee.**

No. 6756.

Court of Civil Appeals of Texas, El Paso.

April 25, 1979.

James W. Maxfield, El Paso, for appellant.

Mark Berry, El Paso, for guardian ad litem.

Jerry Severson, El Paso, for intervenors.

John L. Hill, Atty. Gen., David M. Kendall, Jr., 1st Asst. Atty. Gen., R. Steve Bickerstaff, David H. Young, Asst. Attys. Gen., Austin, Robert Hedicke, Gary A. Reaves, J. Todd Southern, Asst. County Attys., El Paso, for appellee.

## OPINION

WARD, Justice.

The natural mother alone appeals from a judgment which terminated the parental rights of the mother and father of their eighteen-month-old child, the judgment naming the Texas Department of Human Resources as the temporary managing conservator. The father's physical abuse of the child triggered the proceedings. We reverse and remand.

The testimony in the case concerning the parties is limited. The child was born in Michigan in early 1976. At that time the child's mother, Vicki Shapley, then approximately seventeen years old, was living with her own mother. Wayne Shapley, the father of the child, was in the Army and stationed overseas. By August, 1977, Wayne had returned to the United States,

and was stationed at Fort Bliss living with Vicki in El Paso with the child. On August 14, 1977, the child, then seventeen months old, was taken to the Emergency Room of William Beaumont Army Medical Center by his mother suffering from bruises and abrasions, and which injuries had been inflicted on the child the night before. The mother was hysterical, reported her husband was a heavy drinker, and that he had beaten the child the night before the admission as well as on another occasion one week before. The mother delayed in reporting the second occurrence until the day following, and after the husband had gone to work. Attending physicians described numerous bruises and superficial abrasions. There were bruises and abrasions to the child's nose and ears. There were no broken bones.

As a result of the child's injuries, a Suit for Protection of Child in Emergency was filed, and the Texas Department of Human Resources was appointed as temporary managing conservator of the child. Thereafter, a suit to terminate the parental rights of Vicki Shapley and her husband, Wayne Shapley, was filed and again the Texas Department of Human Resources was appointed temporary managing conservator for the child. The termination petition was based upon Tex. Family Code Ann. sec. 15.02(1)(D) and (E) and the "best interest" provision in sec. 15.02(2) (Supp.1978–1979). Thereafter, hearings were held on October 27, November 9, November 30, and December 1, it appearing from the final judgment that all of the hearings were a part of a final trial on the merits, though the appealing mother disagrees with this statement. At the time of the November 9 hearing, Mrs. Allen Nieboer of Michigan, maternal grandparent of the child, and her husband were permitted to intervene with her request that she and her husband be made permanent managing conservators of the child.

After the original petition was filed, Army medical doctors and counselling personnel, together with counselors from the Texas Department of Human Resources, all acting as a child protective case management team, began counselling sessions with the Shapleys, and as a result the group made its recommendations to the Court at the first hearing on October 27 that the child should be temporarily returned to the parents under court ordered supervision until June, 1978, the date Shapley was to be discharged from the Army; that until that date and a final determination, the parties were to continue with marital and child counselling sessions; that the counselling personnel would continue with unannounced home visits, and that the child would be examined twice monthly by Army physicians. At the conclusion of the first hearing, the Court ordered further social studies to be performed and continued the child's custody in the Department of Human Resources. At the conclusion of the second hearing, the Court ordered that a social study be performed concerning the background of the maternal grandparent. At the third hearing, it was the final recommendation of the medical and investigating personnel that the parental authority of the parents be permanently terminated and that the Texas Department of Human Resources be appointed the managing conservator for the child. Thereupon, the Court entered its final decree terminating the parental authority of the parents, and from that order the mother has appealed.

■ The mother's first point concerns the Court's refusal to grant her request for a jury trial, the request not being made until November 8th. Her position is that the first hearing on October 27 was one of a temporary hearing and not one on the merits. The record, including the final judgment, reflects that the final trial on the termination proceedings started on October 27 and for various reasons was thereafter continued until finally concluded on December 1st. The jury request was not timely made. Tex.R.Civ.P. 216. The point is overruled.

■ The next two points complain of the refusal of the trial Judge to grant Appellant's motion that he disqualify himself after he had made certain statements to the newspaper reporters, and had requested

that the District Attorney investigate the case for criminal prosecution. Apparently at that time the District Attorney's office had already investigated the case and declined prosecution. Testimony shows that the District Judge, immediately after the first hearing, had discussed the pending case with a reporter of one of the local newspapers and informed him that a lighted cigarette had been shoved up the nose of the child, and had further given his opinion that the child had been tortured and that the ear of the child had been nearly ripped off. Two of these inflammatory opinions were not reflected by any evidence in the case, the medical opinion being to the effect that the bruises and abrasions suffered by the child while severe were only of a superficial nature. Following the Judge's meeting with the reporter, it appeared that numerous articles appeared in the local newspaper concerning the case and the parents. The mother argues that by these actions the trial Judge in effect put himself in the position of counsel in the case within the terms of Tex.Const. art. V, sec. 11. She further argues that his action reflected a bias to the extent that she was not able to obtain a fair trial and that she was entitled to a mistrial. Prior to the effective date of the Code of Judicial Conduct on September 1, 1974, the grounds enumerated by the Constitution were held to be both inclusive and exclusive and mere bias and prejudice were not disabling factors. *Chilicote Land Company v. Houston Citizens Bank & Trust Company*, 525 S.W.2d 941 (Tex.Civ.App.— El Paso 1975, no writ). Now under the Code, the subject of a disqualification has been broadened and the direction has been made that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. The direction is set out in Canon 3, subdivision C. See Title 14 Appendix.

The direction is specific under subparagraph (1) that he should disqualify where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed facts concerning the case. The problem here presented is that the trial Judge, after the proceedings had started, gave public vent to a bias and prejudice which he had acquired from hearing the evidence and seeing the exhibits introduced into evidence and not from any independent knowledge of the events. Such can be a natural reaction. But the Code of Judicial Conduct rightfully condemns such comments to the press during the actual trial. Canon 3 A(6) is as follows:

A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

After the violation, the parties could only thereafter entertain a feeling that the scales would be unfairly balanced against them during the remainder of the trial. See 1 McDonald, Texas Civil Practice, sec. 1.22.1 at 95. Unethical conduct, however, is not necessarily a legal ground for reversal, and the points are overruled.

We note that the trial Judge, in overruling the motion to disqualify himself, ignored the command of Art. 200a, sec. 6, Tex.Rev.Civ.Stat.Ann. (Supp.1978–1979), which states the following:

A district judge shall request the Presiding Judge to assign a judge of the Administrative District to hear any motions to recuse such district judge from a case pending in his court.

Since no point has been presented to us that the Judge failed to abide by the command, we will continue.

■ The mother's final two points attack the legal and factual sufficiency of the evidence supporting the parental termination order. In addition to what has been discussed, we note that the mother always cared for her child. The record is to the effect that all acts of abuse were done by the child's father. The record does show that the mother waited one day before taking the child to the hospital after the child

was beaten by the father on August 13, 1977. In November, the mother filed suit for divorce against the husband. In November, the husband again become intoxicated, pushed the mother around, and apparently abused the family's pet puppy. It was the opinion of all witnesses who interviewed the mother after the first hearing that they believed it was unlikely that the mother would remain separate and apart from her husband, and there was a danger that there would be future injury if the child was around his father. On this testimony we overrule the no evidence point.

After considering all the evidence, we sustain the mother's insufficient evidence point. We do this because of the caution demanded by the Supreme Court in termination cases under Section 15.02. *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976); *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976); *Schiesser v. State*, 544 S.W.2d 373 (Tex.1976). In *Wiley v. Spratlan* at 352, the Supreme Court ruled that actions which break the ties between a parent and child can never be justified without the most solid and substantial reasons; that the proceedings should be strictly scrutinized; and that the State bears a serious burden of justification before intervention in this final act of termination. Under these directions, we hold the evidence insufficient and for the following reasons. It was only because of the mother's love for her child that the beating was ever called to the attention of the authorities in the first place. Her delay could well have been caused by her own fear of her husband. At the time of the first hearing on October 29, it was the recommendation of all witnesses that the child be returned to the mother. After the newspaper publicity, the investigators testified that the two parents reported having received threatening telephone calls; that the parents then became withdrawn and uncooperative with the authorities. This would be a normal reaction by this mother in her position where the newspaper publicity was initiated by the trial Judge sitting on her case. The caseworker most closely connected with the case noted that it could have been her own reaction to the newspaper publicity that caused her to change her mind from her first conclusion that the mother retain the custody of the child. And finally, we note that both the County Attorney and the child's guardian ad litem recommended to the trial Judge that the parental right of the mother not be terminated at the time, but that the maternal grandmother be appointed the managing conservator, that the natural mother be made the possessory conservator, and that only the parental rights of Mr. Shapley be terminated. We view the record as unsatisfactory as far as termination of the mother's rights were concerned. *Johnson v. Jefferson County Child Welfare Unit*, 557 S.W.2d 569 (Tex.Civ.App.—Beaumont 1977, no writ).

Insofar as it permanently terminated the parental authority of Vicki Shapley, the judgment is reversed and is hereby remanded for a new trial as to Vicki Shapley alone.