

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| ROSA SERRANO, | | No. 08-17-00190-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 243rd District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20170D00317) |
| | § | |

## **O P I N I O N**

The predominate issue in this appeal is whether the trial court abused its discretion in conducting voir dire. Specifically, Appellant Rosa Serrano complains that the trial court erred in (1) failing to excuse a venireperson based her inability to read and write English, (2) intimidating venirepersons, (3) empaneling a Jehovah's Witness, and (4) refusing to reopen the voir dire to address statutory qualifications and exemptions of venirepersons. She also complains that the trial court failed to grant a continuance. Wrapped up in several of these voir dire claims is the question of whether the error, if any, falls into a category one, two, or three right in the *Marin v. State*[1] scheme for error preservation. We conclude that several of the errors raised here are category three rights that required a proper objection below. We overrule those issues on forfeiture grounds

---

[1] 851 S.W.2d 275 (Tex.Crim.App. 1993).

and resolve the balance of the preserved issues on the merits against Appellant. Accordingly, we affirm the conviction below.

## BACKGROUND

A jury convicted Appellant of Medicaid fraud and theft. The gravamen of the State's case claims that Appellant, who ran an eye glass business ("The Lens Factory"), would bill and collect for making eyeglasses that were reimbursed by Medicaid, all without the knowledge of the Medicaid recipient. She was the sole employee of the business. The scheme, as explained by the State, began with Appellant legitimately filling a customer's prescription for eyeglasses that was billed to Medicaid. Under Medicaid rules, a person can only obtain a new pair of glasses every twenty-four months, unless the person is younger than twenty-one and the existing pair were lost or broken, or their prescription changed. Under the lost or broken exception, there was no limit on the number of replacement pairs, so long as the proper form was completed. The State's case showed that Appellant, armed with an actual customer's Medicaid account number, would then begin billing Medicaid for replacement pairs of glasses under this lost or destroyed exception. The actual person for whom the eyeglasses were made, however, did not know that any eyeglasses were made for them, or that Medicaid had been billed.

The matter came to light when the State received a complaint from a person who actually tried to obtain replacement eyeglasses and was told that they had received a pair of glasses just five days earlier. Following up on that person's complaint, the State executed a search warrant at Appellant's business. Based on her billing records to Medicaid, the State also interviewed some twenty-seven Medicaid participants for whom claims had been submitted. Comparing the claims submitted in their name, to what the customers identified as legitimate claims, led the State to conclude that Appellant engaged in a pattern of fraudulent overbilling in some of those persons' accounts.

2

At trial, the State presented ten witnesses for whom claims had been submitted. With varying degrees of precision, the witnesses estimated the number of times they had actually gone to the Lens Factory to obtain a pair of glasses. The State also admitted an exhibit which detailed the claims that the Lens Factor had billed for each those same witnesses. Comparing the two showed that Appellant billed Medicaid for services never rendered. As an example, witness Karla Cardenas testified that she only went to Lens Factor one time and in the year 2010. Appellant, however, had billed Medicaid for three dates of services in 2014, twenty-seven dates of service in 2015, and three dates of services in 2016. In the aggregate, the State contended that Appellant had fraudulently billed $34,524 just for those ten Medicaid claimants over a four-year period. An expert presented by the State calculated that over a multi-year period Appellant had submitted $81,622.50 in fraudulent claims for all the Medicaid accounts it focused on, for which she was paid $47,782.36.

Appellant called no witnesses in her own defense. Her cross-examination of the Medicaid claimants was generally limited to whether they had ever had been denied any services because of Appellant's billing practices, and their recollection of dates and number of glasses they had obtained. Appellant's cross-examination of the State's expert focused on whether the State's calculation of the overbilling might have included duplicate billings or claims subject to appeal (which the expert denied). In closing, Appellant urged that only ten of the twenty-seven Medicaid customers at issue testified, that the computer automated billing system is complicated, and the witnesses' recollection about how many glasses they legitimately asked for was subject to foibles of memory.

The jury charge submitted questions on both Medicaid fraud and theft, both with an aggregate amount of more than $20,000 but less than $100,000. The jury convicted Appellant on

both counts, and the trial court sentenced her to eleven years confinement. Appellant brings six issues on appeal, the first five of which all relate to the voir dire.

## VOIR DIRE

### Refusal to disqualify a venireperson based on English language skills

Appellant's first issue raises a common problem faced by many Texas trial courts. In most venire panels, a few venirepersons may have limited English language skills, and thus cannot meet the statutory prerequisite of being able to "read and write." TEX.GOV'T CODE ANN. § 62.102; TEX.CODE CRIM.PROC.ANN. art. 35.16; *see also Stillwell v. State*, 466 S.W.3d 908, 912 (Tex.App.--Fort Worth 2015, no pet.)(noting that the "read and write" qualification encompasses the ability to understand English); *see also Vera v. State*, 496 S.W.3d 293, 297 (Tex.App.--San Antonio 2016, pet. ref'd)(Chapa, J., concurring)(noting distinction between the statutorily required ability to read and write English, and constitutional necessity for jurors to comprehend proceedings). At the same time, experience dictates that some venirepersons will seek to evade jury service by any excuse possible, and a trial court must in the limited time of conducting voir dire, distinguish between those who truly cannot understand the proceedings from those who simply wish to escape them.

Here, the trial court used a series of questions to test any venireperson who claimed that they could not understand the English language proceedings. The trial judge questioned the venireperson about the length of time they had lived in the United States, their employment history, their interaction with other family members, periodicals that they read, and what they had understood in the proceedings thus far. The trial judge also spoke to the panel in Spanish, and the contents of those communications are not of record, other than that they occurred.[2]

---

[2] The trial court stated the following to the panel after the lawyers finished their voir dire presentations:

4

Specifically, the trial court questioned three venirepersons in the strike zone who claimed they had problems with the English language and dismissed two of them for cause on the agreement of both Appellant and the State. As to a third venireperson, however, the trial court denied Appellant's challenge for cause. The following is the trial court's interaction with that prospective juror:

COURT: Ma'am, how long have you been in the country?

VENIREPERSON 13: I don't understand because I am deaf. I don't understand.

COURT: You're deaf?

VENIREPERSON 13: A little.

COURT: That one, he never listens to me either.

VENIREPERSON 13: I'm sorry, I don't understand you.

COURT: How long have you been in the country?

VENIREPERSON 13: About 29 years in El Paso.

COURT: In this country, in this great country, how many years?

VENIREPERSON 13: Twenty-nine.

COURT: And you have not learned any English?

VENIREPERSON 13: I understand basically -- basically English. But when you speak very fast, I don't understand.

COURT: Did you hear anyone speak fast this morning? Because these are some slow talkers.

VENIREPERSON 13: I can't understand. I'm sorry.

COURT: Have you had any problem with anything I've told you this morning? Answer me, please.

VENIREPERSON 13: I'm sorry. I don't understand you.

---

Court: It was my understanding that somebody said they didn't understand English. (Speaking Spanish.) Okay. And listen to me, this is not -- I will bring you up here to the bench, and I'll decide whether you speak sufficient English. So don't raise your hand in an effort to get out of jury duty. Don't do that. So those of you -- (Speaking Spanish.)

COURT: When I said, 'Those that don't speak English, stand up,' why did you stand up?

VENIREPERSON 13: Yeah, but I understand.

COURT: You understand that part?

VENIREPERSON 13: But when you are speaking for the case, I don't understand the case.

COURT: You didn't understand anything this young lady told you?

VENIREPERSON 13: Some words, not the demonstrations.

COURT: Do you have children?

VENIREPERSON 13: Two sons.

COURT: They speak English?

VENIREPERSON 13: Yes.

COURT: You don't speak English.

VENIREPERSON 13: More or less.

COURT: Twenty-nine years in this great country of ours --

VENIREPERSON 13: Uh-huh.

COURT: And you have no intention of learning the language of America?

VENIREPERSON 13: Yeah, I -- I studied English, but not practice English.

The trial court then stated for the record that he had no problems understanding her English. The State's prosecutor agreed, but Appellant's counsel stated he had concerns about her comprehension and did not make out every word she spoke. Appellant then made a motion to strike based on the venireperson's lack of comprehension, which the trial court denied.

Both the State and Appellant ultimately struck this venireperson. After the jury was seated, Appellant's counsel stated:

Your Honor, just with regard to -- just for purposes of the record, Judge, juror 13, which was the challenge for cause that the Court denied, obviously I'm renewing my objection. We did exercise the strike on that particular witness [sic]. And I'm representing to the Court that if that juror had been stricken for cause, I would have

6

exercised the strike on someone else. That's our only objection. Otherwise, the count is fine.

*Standard of Review*

We review a trial court's ruling on a challenge for cause for a clear abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 807 (Tex.Crim.App. 2010). We accord that deference because the trial court is in the best position to gauge the demeanor and responses of the prospective jurors. *Id.*, *citing Gardner v. State*, 306 S.W.3d 274, 295-96 (Tex.Crim.App. 2009). Particular deference is due when the prospective juror's answers are vacillating, unclear, or contradictory. *Smith v. State*, 297 S.W.3d 260, 268 (Tex.Crim.App. 2009); *see also State v. Gutierrez*, 541 S.W.3d 91, 100 (Tex.Crim.App. 2017)(in discussing potential bias, stating "appellate courts should give almost total deference to the trial court's determination if it is supported by the record").

If a trial judge errs in overruling a challenge for cause, a defendant must show harm. *Buntion v. State*, 482 S.W.3d 58, 83 (Tex.Crim.App. 2016), *cert. denied*, 136 S. Ct. 2521 (2016). In this context, harm flows from a defendant having to use a preemptory challenge on the venireperson that the trial court refused to strike, and then being unable to use that preemptory on some other objectionable juror. *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex.Crim.App. 2014) ("When the trial judge denies a valid challenge for cause, forcing the defendant to use a peremptory strike on a panel member who should have been removed, the defendant is harmed if he would have used that peremptory strike on another objectionable juror."); *Chambers v. State*, 866 S.W.2d 9, 22 (Tex.Crim.App. 1993), *citing Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Crim.App. 1986). Accordingly, to raise this issue, the Texas Court of Criminal Appeals has set out three distinct steps to preserve error:

> Error is preserved for review by this Court only if appellant (1) used all of his peremptory strikes, (2) asked for and was refused additional peremptory strikes, and (3) was then forced to take an identified objectionable juror whom appellant would not otherwise have accepted had the trial court granted his challenge for

7

cause (or granted him additional peremptory strikes so that he might strike the juror).

*Buntion*, 482 S.W.3d at 83.

*Application*

The State's first response to this issue correctly notes that Appellant did not meet each of the three preservation requirements. Appellant did not request any additional preemptory strikes. And while Appellant claims there was an objectionable juror she could not strike, that person is not identified anywhere in the record. Much of Appellant's discussion focuses on the potential harm of having a non-English speaker (or partially deaf person) hearing a case that was complicated. Irrespective of the level of complexity, venireperson thirteen did not sit on the jury. She was struck (actually double-struck). The harm would be the *next* person that Appellant had to accept, and as to that person, we have no information other than Appellant's naked claim that such a juror exists. Our independent review of the voir dire does not reflect an unusual number of venirepersons in the strike zone who gave hostile answers to Appellant during voir dire. Accordingly, whether parsed as an error preservation issue, or as a defect in proving harm, we overrule Issue One.

**Intimidation of venirepersons**

Appellant's second, third, and fourth issues all in varying ways complain that the trial court's treatment of the venire denied her a right to a fair and impartial jury. Issue Two focuses on the trial court's statement to the venire that he was not interested in the venire's "opinion of the law." Issue Three focuses on the trial court telling a venireperson to sit down and not interrupt the voir dire. Issue Four focuses on the apparent selection of a Jehovah's witness who was not identified as such until after the jury was seated. No specific strike for cause is at issue. Instead, Appellant complains about the potential chilling impact that the trial court's interactions had on

8

the rest of the venire.  And as we discuss below, no objection to the trial judge's conduct was lodged at trial.  We first set out the complained of conduct.

*Conduct of the Voir Dire*

Aside from several general instructions, the trial court began the voir dire by paraphrasing the juror qualifications from TEX.GOV'T CODE ANN. § 62.102 and TEX.CODE CRIM.PROC.ANN. art. 35.16, as well as exemptions from TEX.GOV'T CODE ANN. § 62.106.  The court stated that it was "important that you let us know certain things because the lawyers will have a short time in which to get to know you."  The court instructed that "at any time during voir dire it becomes important for me to know your answer but too embarrassing for you, raise your hand, give us your number, and we will speak to you at the bench."  "You must be -- you must listen closely to the questions from the Court and the attorneys and respond fully and honestly."  "Remember that you took an oath that you will tell the truth, so be truthful when the lawyers ask you questions and always give complete answers. If you do not answer a question that applies to you, that violates your oath."

Yet Appellant focuses us on several portions of the voir dire that she claims are at odds with those general statements.  At the start of Appellant's voir dire, her lawyer made a plea for jurors to be honest and disclose "something [that] doesn't sit well with you" or something "you don't like . . . just let us know so that we know how to evaluate that --[.]"  The trial court then interrupted and admonished the jury as follows:

> COURT:  Listen up.  I'm not interested in whether you like the law or not.  That's not why you're here, and *I'm not interested in your opinion of the law*.  This law, I did not write.  You did not write it.  This is the law the legislature of the State of Texas wrote.  You took an oath to follow it.  I took an oath to follow it.  The only issue is if you cannot follow it.  This is not the time to decide, I think it should read two; no, I think it should be four, maybe six.  You write your legislature.  All right?

9

*So we are not interested in your opinions.* Okay. I just want to know, will you follow the law as the State of Texas has written the law. That's why we're here. Is that understood? [Emphasis added.]

The venire acknowledged the instruction. Appellant's counsel then agreed that the "judge is correct" and indicated that that was the point he was trying to get at.

Then, venireperson six spoke up and appeared to make the point that a defendant would not want someone on the jury who did not want to be there.[3] The venireperson expressed his willingness to follow the law, and was about to say something about his children, when the trial judge interrupted and this exchange occurred:

COURT: Whoa, whoa, whoa. Excuse me. We'll address who likes jury duty and who doesn't. We're going to talk about that later. What I'm trying to explain to you -- *on your feet*. If you were charged with a crime in the great State of Texas, you have the right to demand a jury trial. Twelve of your peers will decide if you're guilty or not guilty. Whether the police arrested you or not, whether the district attorney indicted you or not, 12 of you, not me -- did you understand that? Twelve people, citizens off the street, will decide you are guilty as charged in the indictment or you are not guilty as charged in that indictment. We are not interested in who would like to be here or who would rather be out somewhere else having a good time. This defendant has been charged with a felony by the State of Texas.

She is -- she, I anticipate, will enter a plea of not guilty. That means the State of Texas will prove it beyond a reasonable doubt each and every element, or I will instruct you to return a verdict of not guilty. If 12 of you decide that the State of Texas proved each and every element beyond a reasonable doubt, you will return a verdict of guilty. I have no say. Did you hear that? That is none of my business. What the jury decides back there, that's what they decide.

Do you know that, juror number 6?

VENIREPERSON 6: Yeah. What -- you didn't understand my point.

---

[3] The venireperson's ultimate point, however, was unclear:

[VENIREPERSON 6]: I think you're right because if I was on her -- on her chair right now, I wouldn't like people -- like for -- sorry, for -- you're saying him as an example, he don't want to be here, she don't understand. I don't think that's fair for her. I mean, it's different if we like the law. If not, like me, I'm here right now just following the law, but I don't want to be here.

[APPELLANT'S COUNSEL]: Okay.

[VENIREPERSON 6]: I have my kid at my household. [at which point the trial court interrupts]

10

COURT: I understood exactly your point.

VENIREPERSON 6: No, you didn't.

COURT: *Sit down*, number 6. *Sit down. And don't interrupt this voir dire again.* Do you understand me, sir?

Juror number 6, I'm going to ask you one more time. Did you understand -- *get on your feet*.

VENIREPERSON 6: Yes, sir.

COURT: Did you understand the instructions of this Court, sir?

VENIREPERSON 6: Yes, sir. I just stated my opinion.

THE COURT: Be seated.[4] [Emphasis added.]

Later in the voir dire, Appellant's counsel addressed the presumption of innocence and one unidentified venireperson stated they already believed that Appellant was guilty. The trial judge then interceded and told the venire what instructions they would be given on presumption of innocence.

> Before you go back there, I will instruct you that as the defendant sits there, she is presumed innocent and will remain innocent until the point when the jury believes each and every element beyond a reasonable doubt. If you have a reasonable doubt as to any of those elements, you will return a verdict of not guilty. If at any point you decide each and every element's been proven beyond a reasonable doubt, you will return a verdict of guilty. The burden is on the State of Texas, not the defense. The defense is not obligated to do anything. Did everybody hear that?
>
> The defense has no obligation to do anything. The State of Texas indicted her. The burden of proof is with the State of Texas. Does everybody understand the law that you will be charged with when you return to that jury room to begin your formal deliberations?
>
> UNIDENTIFIED VENIREPERSONS: Yes, sir.

---

[4] Appellant later asked to bring venireperson six up for individual voir dire, but the trial court refused that request. Appellant moved to strike venireperson six, but the trial court never ruled on the request. The State struck the venireperson from the panel.

Appellant's counsel then followed up and asked if anyone on the panel felt that even despite the law, they could not follow that instruction. Two venirepersons then acknowledged that belief. The following exchange then occurred:

> [APPELLANT'S COUNSEL]: Okay. Anybody else feel that way? Understand, the judge is not trying to bully you guys. He just wants to make sure you understand what the law is.
>
> COURT: Understand something quite clearly. I am a strict person. Okay. There's no need to do that. Four years in the United States Marine Corps. There's rules and regulations, and I'm here to enforce them. I'm not here to bully you. I'm here to tell you what the law is. That is it. That is my job. That's what I took an oath to do, to enforce the law. That's what I fully intend to do. The rules and decorum of this district court of the great State of Texas will be observed in this courtroom. That is my job that I took an oath -- and the same oath I took in the United States Marine Corps, I fully intend to enforce. Does anybody feel bullied? Thank you.

Another venireperson then also acknowledged that they would have a problem following the presumption of innocence.

Finally, Appellant notes that after the parties made their preemptory strikes, and the jury and one alternate was seated and sworn in, one of the jurors stated, "I'm a Jehovah's Witness. My conscious does not allow me to --" at which time the trial court stated, "Have a seat, sir. Have a seat. All right. It's a little late now."

Appellant never objected to the trial court's statements, or handling of the venire, nor did she ask that the Jehovah's Witness be replaced by the alternate, if indeed it was not the alternate that identified him or herself as the Jehovah's Witness.

*Preservation*

"As a prerequisite to presenting a complaint for appellate review, the record must show" that "the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent

from the context." TEX.R.APP.P. 33.1(a)(1)(A). The "traditional and preferred procedure" for preservation of error regarding improper comments by the trial court includes: (1) objecting; (2) requesting an instruction to disregard if the prejudicial event has occurred; and (3) moving for a mistrial if a party thinks an instruction to disregard was not sufficient. *Unkart v. State*, 400 S.W.3d 94, 99 (Tex.Crim.App. 2013). Error preservation is an issue that we have an independent duty to raise. *Darcy v. State*, 488 S.W.3d 325, 328 (Tex.Crim.App. 2016)("[A] first-tier appellate court may not *reverse* a judgment of conviction without first addressing any issue of error preservation. This is true regardless of whether the issue is raised by either of the parties.") [Emphasis in original].

Appellant claims the lack of an objection does not matter, however, because the trial judge's conduct constitutes fundamental error as described in TEX.R.EVID. 103(d) and *Blue v. State*, 41 S.W.3d 129, 131-32 (Tex.Crim.App. 2000)(plurality op.).[5] We discern, however, that Appellant's reliance on Rule 103 and *Blue* is misplaced.

The Texas Court of Criminal Appeals latest word on preservation for errant comments by a trial judge is found in a case cited by neither party to this appeal, *Proenza v. State*, 541 S.W.3d 786 (Tex.Crim.App. 2017). Factually, the trial judge in *Proenza* took over the questioning of an expert witness and through the questioning, arguably indicated the judge's views on the merits the

---

[5] The Texas Court of Criminal Appeals would later write of *Blue*, however:

> With respect to *Blue,* it is not possible to ascertain a majority holding or the narrowest ground or rule that commands a majority of the court. The rationales of the plurality and concurring opinions are entirely disparate: they did not even focus on the same error, much less give the same reason why it was error. The plurality focused on the effect of the trial judge's comments on the jury, while Judge Keasler considered the comments merely as evidence that the trial judge was biased. Consequently, the *Blue* decision has no precedential value. The opinions in the *Blue* case may nevertheless be considered for any persuasive value they might have, in the same way as any other opinion that does not command a majority of this Court, such as a concurring opinion.

*Unkart v. State*, 400 S.W.3d 94, 101 (Tex.Crim.App. 2013).

defense case. *Id*. at 789-90. No timely objection was made. *Id*. The court of appeals, partially relying on *Blue*, reasoned the trial judge's action constituted fundamental error because the conduct was sufficiently egregious so as to deem the judge biased as matter of law. *Proenza v. State*, 471 S.W.3d 35, 51 (Tex.App.--Corpus Christi 2015), *aff'd in part and remanded*, 541 S.W.3d 786 (Tex.Crim.App. 2017).

The Texas Court of Criminal Appeals, however, concluded that Texas no longer follows a common law fundamental error doctrine. 541 S.W.3d at 793. Instead, it analyzed preservation under the three-tier system developed in *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997). *Marin* identifies three types of rules: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. *Id.* at 279-80. Of these three categories, only the first two categories--absolute requirements and prohibitions, and violations of rights that are waivable only--enable the appellate court to hear a complaint without a proper trial objection. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex.Crim.App. 2003).[6]

Moreover, *Proenza* rejected an approach that looks to the degree of prejudice to decide where on the *Marin* spectrum a right falls. Instead, the court held that in determining the preservation requirements for a particular issue, we should consider the nature of the right allegedly infringed upon. 541 S.W.3d at 796, *citing Grado v. State*, 445 S.W.3d 736, 739 (Tex.Crim.App. 2014) and *Ex parte Heilman*, 456 S.W.3d 159, 165-66 (Tex.Crim.App. 2015).

---

[6] Examples of rights that must be implemented unless expressly waived include the "rights to the assistance of counsel, the right to trial by jury, and a right of appointed counsel to have ten days of trial preparation . . . ." *Aldrich*, 104 S.W.3d at 895. "Absolute, systemic requirements [that may not be waived] include jurisdiction of the person, [and] . . . the subject matter, and a penal statute's being in compliance with the Separation of Powers Section of the state constitution." *Id.*

*Proenza* further rejects Rule of Evidence 103(e) as a basis to overlook error preservation. Rule 103(e) states that "[i]n criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved." TEX.R.EVID. 103(e). The court of criminal appeals had seemingly applied the predecessor of this rule as support for a fundamental error doctrine in *Jasper v. State*, 61 S.W.3d 413, 420 (Tex.Crim.App. 2001). The *Proenza* court, however, concluded that the drafting history of the Rule, and its own precedent precluded a "freestanding, harm-based doctrine of error preservation[.]" 541 S.W.3d at 795. Rather, *Proenza* reasoned that Rule 103(e), and the courts prior decisions in *Jasper* and *Marin* all recognize the "uncontroversial proposition" that some rights are "fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system." *Id.*, *quoting Marin*, 851 S.W.2d at 278. Fundamental error is simply a descriptor of those rights that fall into the *Marin* category one and two classifications. *Id.*

Applying this framework to the case before it, the *Proenza* court decided that a trial judge's comments that raised a question of partiality were at least category two *Marin* rights which would require an express waiver to be waived. 541 S.W.3d at 797. It reached that conclusion because the source of the right--Article 38.05--imposes an affirmative obligation on a judge independent of a litigant's duty to request relief:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX.CODE CRIM.PROC.ANN. art. 38.05. The statute is both "couched in mandatory terms" and places the responsibility of compliance with the law "squarely upon the judge." *Id.* at 798. The court also noted that a violation of Article 38.05 may call into question the impartiality of the trial judge. *Id.* at 799. And, "[i]f a category of error by its very utterance tends to threaten the integrity

of the criminal adjudicatory process itself, we may, consistent with *Marin*, deem it proper for appellate courts to at least consider the merits of these claims--even in the absence of a trial-level objection--and take corrective measures as appropriate." *Id*. at 798.

Serrano's complaint, however, does not fit neatly into the *Proenza* analysis. The complaint is limited to the trial court's comments in voir dire, and not in the admission of evidence that Article 38.05 governs. More importantly, the trial judge's comments do not necessarily reflect a bias towards one party or the other. We agree that the comments toward venireperson six were intemperate, but they neither favored nor disfavored either side. In that way, the trial judge's comments are more analogous to other claimed errant statements in voir dire than do not fall into *Marin*'s category one or two classification. *See Arrellano v. State*, 555 S.W.3d 647, 652-53 (Tex.App.--Houston [1st Dist.] 2018, pet. ref'd)(trial judge's erroneous explanation of reasonable doubt in voir dire did not raise an issue concerning judicial impartiality, and thus required objection); *see also Gordon v. State*, 191 S.W.3d 721, 726-27 (Tex.App.--Houston [14th Dist.] 2006, no pet.)(holding that judge's comments during voir dire that criminal justice system treated everyone exactly alike and that defendant controlled everything about system related to how the criminal justice system operates and did not constitute fundamental error, principally because they did not implicate the presumption of innocence); *Oulare v. State*, 76 S.W.3d 231, 234 (Tex.App.--Amarillo 2002, no pet.)(trial court comments about witness credibility only asked panel to have open mind when hearing evidence, did not amount to fundamental error, and required objection to be reviewed).

To be sure, comments in voir dire can implicate Article 38.05, and fit neatly into a *Proenza* analysis. In *Blue*, for instance, a plurality of the Court of Criminal Appeals held that a trial judge's comments to the venire indicating that the judge would have preferred for the defendant to plead

guilty were fundamental constitutional error that tainted the presumption of innocence and, therefore, required no objection to be preserved for appeal. 41 S.W.3d at 132. Yet, the trial judge's handling of the venire here does not touch on an issue that necessarily cuts one way or the other. If the panel was chilled in making comments, both sides were equally deprived of the venireperson's responses.

As *Proenza* concludes, the nature of the right controls its place in the *Marin* hierarchy, and particularly whether the trial judge has an independent duty to avoid the conduct, or whether "compliance need be given only upon partisan request." 541 S.W.3d at 797. Applying that inquiry here, we agree that the trial court's treatment of venireperson six is problematic from the viewpoint of common civility and courtesy. But we find no provision in the Code of Criminal Procedure that elevates civility to the same status as the duty of impartiality as under Article 38.05. Nor would an objection in a situation like this be necessarily futile. There was obviously a failure of communication between the bench an venireperson six. Had that been pointed out to the trial judge, an instruction (or apology) could well have ameliorated any concern.

In sum, Article 38.05 which was directly at issue in *Proenza* cannot provide the source of a category one or two right in this case. And if not Article 38.05, what then? Judicial Canon 3(B)(4) requires that a "judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity[.]" We could conclude that the trial judge's treatment of venireperson six implicates this Canon. The Judicial Conduct Commission found somewhat analogous conduct to be such a violation. *See Public Reprimand of Luis Aguilar, District Judge* (11/06/2017)(findings 56-65) found at http://www.scjc.texas.gov/media/46577/honlaguilar15-0984-dietalpubrepoaewebsite.pdf. Nonetheless, we are disinclined to elevate a violation of the patience, dignity, and courtesy

17

elements of the Judicial Canons to the level of a *Marin* category one or two right. Violations of the Judicial Code of Conduct are "not necessarily a legal ground for reversal." *Kemp v. State*, 846 S.W.2d 289, 305 (Tex.Crim.App. 1992) *cert. denied,* 508 U.S. 918 (1993), *quoting Shapley v. Tex.Dep't of Human Res.,* 581 S.W.2d 250, 253 (Tex.Civ.App.--El Paso 1979, no writ). "The Code is designed to provide guidance to judges and 'to provide a structure for regulating conduct through the State Commission on Judicial Conduct.'" *Merritt v. Davis*, 331 S.W.3d 857, 863 (Tex.App.--Dallas 2011, pet. denied), *quoting* TEX.CODE JUD.CONDUCT, Canon 8(A), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. B. Indeed, patience, dignity, and courtesy are essential qualities of a judge's demeanor. Yet if every instance of perceived impatience, indignity, or rudeness became appealable without any objection, the fear of the dissenting opinions in *Proenza* might well become a reality. 541 S.W.3d at 812 (Keller, P.J., dissenting)("Moreover, anything a judge says in front of a jury could potentially be examined for its propriety. An inventive appellate attorney might be able to find fault with a statement that no one who attended the trial thought was objectionable.").

Appellant directs us to *Drake v. State*, 465 S.W.3d 759 (Tex.App.--Houston [14th Dist.] 2015, no pet.) as authority for her fundamental error claim. The trial judge there had a venireperson arrested in front of the entire panel. *Id.* at 762. The venireperson, a Jehovah's Witness, categorially stated that he would not look at child pornography in a case where such material would likely be admitted as evidence. Focusing on the constitutional underpinnings of the right to counsel, and the right to participate in voir dire, the court concluded that the trial court had violated a fundamental right and no objection was necessary. *Id*. at 763-64. *Drake* of course is an extreme case. It was also decided before *Proenza.* Its error preservation analysis included consideration of whether the harm was egregious, something that *Proenza* expressly rejects as the criteria for

18

error preservation. *Cf. Drake*, 465 S.W.3d at 763 ("Absent an objection, a defendant waives error unless the error is fundamental--that is, the error creates egregious harm.") with *Proenza*, 541 S.W.3d at 795-96 ("That *Marin* leaves no room for a harm-based doctrine of error-preservation is further bolstered by our subsequent caselaw on this subject. . . . To adopt a model of error preservation that incorporates a 'harmfulness of error' standard would fly in the face of these settled jurisprudential standards--and would, in addition, risk subverting the gate-keeping intent underlying *Marin*."). Moreover, the *Drake* decision was based not only on the arrest of the venireperson, but also on comments made by the trial judge about the kind of punishment that should be imposed. 465 S.W.3d at 763. In that way, *Proenza*'s consideration of Article 38.05 might have reached the same result, but for a different reason. Yet that Article 38.05 rationale is not applicable here.

*Drake* also highlights the constitutional implications of restricting voir dire. *Id.* at 763-64. But not every action that a trial judge might take that impacts voir dire rises to the level of a constitutional violation, or at least one that implicates a category one or two *Marin* right. For instance, trial judges often place time limitations on voir dire, which necessarily affects the amount of questions that can be asked, and the information that counsel can learn in aide of exercising preemptory strikes. Yet we are not aware of any case that allows a party to raise that kind of complaint for the first time on appeal without making some objection below, such as requesting more time, or outlining the additional inquires that counsel would like to pursue. *See Wappler v. State*, 138 S.W.3d 331, 331 (Tex.Crim.App. 2004)(finding no waiver when defendant objected to fifteen minute time limit, and attempted to dictate bill with additional questions); *S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex.App.--Houston [14th Dist.] 1996, writ denied)(to preserve error when defendant claims trial judge cut voir dire short, the record must reflect a question which the trial

court has not allowed to be answered).  For that matter, even some constitutional rights fall into *Marin* category three rights and must be urged to be preserved.  *Marin*, 851 S.W.2d at 279.  As none of the complaints raised in Issues Two, Three, and Four were raised below, and because they do not fall within a *Marin* category one or two complaint, they are forfeited.

Issues Two, Three, and Four are overruled.

### Refusal to Question on Qualifications and Exemptions

In Issue Five, Appellant complains that the trial court 'refused to address qualifications and exemptions of jurors."   The trial court informed the jury of the statutory qualifications for jury service and the statutory exemptions they could claim at the outset of voir dire.  Yet, the trial judge did not specifically ask the panel if anyone failed to meet those qualifications or wished to claim an exemption.  Nor did the State or Appellant make inquiry of those matters during their voir dire. As the attorneys and court were calculating the correct strike zone, this exchange took place:

> [APPELLANT'S COUNSEL]:  Assuming that there aren't any other exemptions or --
>
> COURT:  I'm not doing exemptions.  That's been cleared.  Voir dire is over.  We're not starting over.  That's --
>
> [APPELLANT'S COUNSEL]:  Just note for the record, Judge, my objection to that.  We didn't do exemptions.  We didn't do non-English speakers.
>
> THE COURT:  You have 35 minutes to conduct your voir dire.  You requested 30 minutes.  I gave you an additional five minutes.
>
> [APPELLANT'S COUNSEL]:  I understand, Judge.  My concern is that, normally, that's something that the Court goes into.
>
> THE COURT:  That's done in jury hall.  Exemptions are done in jury hall.  And I'm not arguing with you.  That's it.  We're done.

Despite this exchange, one venireperson indicated they wished to talk to the trial court about their ability to understand English, and the trial court then made an announcement to the panel that it

would bring up to the bench anyone with the same issue. The trial court then individually talked to several panel members who claimed to have problems understanding the English language.

Based on the record and objection made at trial, we reject Appellant's fifth issue. First, Appellant only specifically complained to the trial court about its failure to clear "exemptions" and "non-English speakers." Exemptions are defined in TEX.GOV'T CODE ANN. § 62.106 and include such matters as venirepersons who are over seventy, must care for a child, or attend school. *Id.* at § 62.106(a)(1),(2),(3). The trial did inform the panel about all the exemptions under Section 62.106 at the start of the voir dire. The trial court did not ask the venire for a specific response as to whether any of the exemptions applied, but Appellant can point to no textual source for a specific duty to do so. Article 35.03 provides that the trial court "shall then hear and determine excuses offered for not serving as a juror" unless the court is subject to plan approved by a commissioner's court to have a "court's designee may hear and determine an excuse. TEX.CODE CRIM.PROC.ANN. art. 35.03 § 1 and § 2. We do not equate "hear and determine" as the same thing as "seek out and solicit." Moreover, there is no indication in our record that there were people subject to exemptions seated on the jury. Nor is there anything in our record that rebuts the trial court's claim that exemptions were also cleared in the jury assembly hall.

Appellant also asked the trial court to deal with non-English speakers. While the trial court initially stated it would not, it in fact did. Someone in the panel expressed the concern that they could not understand English, prompting the trial court to make an announcement about that issue to the venire and invited up anyone with that concern. Several panel members responded and were questioned individually. We overrule Issue Five.

## DENIAL OF MOTION FOR CONTINUANCE

Appellant's final issue complains that the trial court denied "defense counsel's first motion for continuance[.]" Appellant actually urged two motions for continuance on the day of trial.

21

Appellant filed her own *pro se* written motion.  Her counsel also made an oral motion to the trial court.  The wording of Appellant's issue would suggest she only complains of her counsel's motion, but the body of her and the State's argument reference both motions, so we will likewise address both.

### Standard of Review

A criminal trial "may be continued on the written motion . . . of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion."  TEX.CODE CRIM.PROC.ANN. art. 29.03.  Such a motion must also be "sworn to by a person having personal knowledge of the facts relied on for the continuance."  *Id.* art. 29.08.  "We have construed these statutes to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance.  Thus, if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex.Crim.App. 2009)(footnotes collecting cases omitted); *accord Blackshear v. State*, 385 S.W.3d 589, 591 (Tex.Crim.App. 2012)(holding the same).

Determination of a motion for continuance is a matter left to the sound discretion of the trial court.  TEX.CODE CRIM.PROC.ANN. art. 29.06 (sufficiency of a motion for continuance shall be addressed to "sound discretion" of court and "shall not be granted as a matter of right").  As such, we apply an abuse of discretion standard of review to the trial court's ruling.  *Heiselbetz v. State*, 906 S.W.2d 500 (Tex.Crim.App. 1995).  A trial court abuses its discretion in denying a motion for continuance when the defendant was actually prejudiced by counsel's representation. *See Heiselbetz*, 906 S.W.2d at 512; *Duhamel v. State*, 717 S.W.2d 80, 83 (Tex.Crim.App. 1986), *cert. denied,* 480 U.S. 926 (1987)(cases stating that to be entitled to a continuance, there must be

22

a showing that defendant was prejudiced by counsel's inadequate preparation time). That prejudice might include "unfair surprise or an inability to effectively cross-examine any of the State's witnesses or that crucial testimony would have been given by potential witnesses." *Janecka v. State*, 937 S.W.2d 456, 468 (Tex.Crim.App. 1996).

Appellant also cites us to *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex.Crim.App. 1982) that set forth factors that should inform the trial court's decision whether to grant a continuance based on the absence of counsel of defendant's choice. Those factors include: (1) the length of delay requested, (2) whether other continuances were requested and whether they were denied or granted, (3) the length of time in which the accused's counsel had to prepare for trial, (4) whether another competent attorney was prepared to try the case, (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court, (6) whether the delay is for legitimate or contrived reasons, (7) whether the case is complex or simple, (8) whether the denial of the motion resulted in some identifiable harm to the defendant, and (9) the quality of legal representation actually provided. *Id.*; *Hinman v. State*, No. 08-16-00226-CR, 2018 WL 3627966, at *2 (Tex.App.--El Paso July 27, 2018, no pet.)(not designated for publication)(applying these factors in choice of counsel based continuance motion). All but the fourth factor could be relevant here, and essentially aide in measuring the prejudice to the defendant balanced against the "the general interest in the prompt and efficient administration of justice." *See Gandy v. State of Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978)(noting balance in choice of counsel cases).

### Procedural Background

Appellant was indicted on January 26, 2017. Her first appointed counsel withdrew because of a conflict on February 28, 2017. New counsel was appointed on the same day. Trial was set for August 4, 2017, by an order dated April 5, 2017. According to the unrebutted representation

23

of the State's prosecutor, that date was agreed to by both parties as one by which they could be prepared to try the case. On July 5, 2017, Appellant asked for the appointment of an investigator, which the trial court granted the same day. Also on July 5th, Appellant ask for the appointment of a Medicaid billing specialist as an expert witness at the State's expense. On the same day, the court granted that motion as well.

The State filed an initial notice of extraneous offenses on June 30, 2017. The first notice included eighty-five potential extraneous matters, ranging from traffic tickets to other claims of Medicaid fraud. The State amended the notice twice, once on July 28th, and then again on August 1, 2017. The amendments added five additional matters. Several of the extraneous offenses involved a pending civil contempt proceeding. It appears that Appellant was evicted from one property where she operated her business. She apparently claimed to own the property, however, and posted it foreclosure. Another trial court enjoined her from conducting a foreclosure sale, but she proceeded to sell the property. A series of contempt orders resulted in her confinement for 150 days, beginning on July 12, 2017. Representing herself *pro se*, she filed a habeas corpus proceeding in federal court.

On July 20, 2017, Appellant's counsel filed a motion for a competency exam, contended that while she demonstrates an "outward lucid appearance," she was unable to assist counsel the defense of the case. The trial court entered an order for a competency exam which was apparently completed on July 31, 2017.

### Basis of the Motion for Continuance

Appellant's pro se motion asserted two main grounds seeking a continuance. First, she claimed that she was illegally restrained under the civil contempt order as of July 12, 2017. Because of that incarceration, she claimed to be unable to prepare for trial and provide evidence

to rebut the charges in this case. She also complained that she was unable to reach her court appointed expert and to meet with her attorney. The second ground pertained to plea negotiations. As best we can understand that ground, she claims that a previous plea offer that she rejected did not account for all the pending or potential charges against her, and now that some of those other matters had resolved, she wanted a new plea deal. That ground also asserts she was attempting to remove this criminal case to federal court.

The second continuance motion was oral, and asserted by trial counsel just before voir dire. Counsel first claimed that he needed more time because of pending competency evaluation. The trial judge then provided defense counsel with a copy of the psychiatrist's report which found Appellant competent to stand trial. At that point, Appellant's counsel acknowledged the competency issue may have been resolved, subject to his review of the report. Counsel then piggybacked off his client's *pro se* motion, emphasizing its essential claim that Appellant needed additional time to prepare. Counsel alluded to "certain limitations" on his ability to gather evidence and documents, the voluminous nature of discovery, the additional notices of extraneous offenses, and the fact Appellant's expert had not been able to finalize her review of the case. Finally Appellant's counsel communicated that Appellant had asked counsel to withdraw within the last few days prior to trial.

### The Ruling

At the outset, the trial court stated that because Appellant was represented by counsel, she could not file a *pro se* motion. In its words, "[t]he Court will not entertain *pro se* motions for continuance when she's represented by counsel." Then after hearing argument on trial counsel's oral motion, the trial court stated that it normally "does not entertain oral motions for continuance as I'm preparing to bring in the jury. I guess I'll make an exception for this one case and assuming

25

-- did you submit it into writing?" Counsel, however, could only point to the written *pro se* motion. The trial court then restated "that we do not entertain *pro se* motions." But then immediately, the trial court stated, "putting all that aside, the motion for continuance is denied."

On appeal, both parties read the record to show that the trial court actually ruled on the *pro se* motion for continuance, and therefore it is properly before us. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex.Crim.App. 2007)(agreeing that a defendant has no right to hybrid representation, that a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel, but once a trial court actually rules on a *pro se* (or any) motion, the ruling is subject to appellate review). Given that both parties believe the trial court in fact ruled on the *pro se* motion, we will assume the trial court in fact denied it.

### Application

We conclude the trial court did not abuse its discretion in denying the *pro se* motion for continuance. The first basis of that motion contended Appellant's incarceration precluded her from assisting in the defense. That incarceration began on July 12, 2017, and thus only covered the last three weeks prior to trial. Nor does the motion explain how she was unable to communicate with her counsel who presumably has the right to visit her in jail. While she claims she could not communicate with the expert, the record does not show that she needed to visit with the expert directly. The second ground relates to her desire for additional plea negotiations. In fact, the record shows that the trial court took several short breaks for additional plea discussions just before trial. Appellant declined the State's offer because she wanted an offer made a month earlier. The trial court was emphatic that it would not accept the earlier rejected plea deal in any event. There is no error in the trial court denying the *pro se* motion.

26

The oral motion presents nothing for review because it is unsworn and does not comply with the Code of Criminal Procedure. *Anderson*, 301 S.W.3d at 279; *Blackshear*, 385 S.W.3d at 591. And even if the oral motion can somehow piggyback off the *pro se* written motion, the trial court did not err in denying it. The first premise of the oral motion--Appellant's competency--is not before us. The court ordered examination by Dr. Jason Dunham is not in our record. There is nothing in our record suggesting that report did not comply with Article 46B.025. TEX.CODE CRIM.PROC.ANN. art. 46B.025 (setting for required findings required for competency exam). No party requested a trial on competency after the issuance of the report. *See* TEX.CODE CRIM.PROC.ANN. art. 46B.005 (a competency trial is not required if "neither party's counsel requests a trial on the issue of incompetency"). On this record, Appellant cannot show prejudice as to the competency claim.

Appellant's counsel also contended that the Medicare expert had not completed her review. The trial court was not informed how much longer the review would take, what it might show, or what specific issues the expert was addressing. Typically for an absent witness, the party moving for continuances must make some showing as to their materiality to the case. *See* TEX.CODE CRIM.PROC.ANN. art. 29.06 § 3 (required showing of what facts that missing witness would testify to and their materiality before granting continuance); *Harrison v. State*, 187 S.W.3d 429, 434 (Tex.Crim.App. 2005)(motion that advised trial court of identity and information counsel hoped to obtain from that witness was sufficient to preserve claim); *see also Washington v. State*, 417 S.W.3d 713, 725 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd)(no prejudice shown in ineffective assistance claim when defendant does not show what evidence a proper investigation would have revealed, nor what benefit could have been obtained from an expert); *Brown v. State,* 334 S.W.3d 789, 803 (Tex.App.--Tyler 2010, pet. ref'd)("[T]he failure to request the appointment

27

of an expert witness is not ineffective assistance in the absence of a showing that the expert would have testified in a manner that benefitted the defendant."). Nothing informs us of what value this expert could have added to the case. Appellant thus fails to make the necessary prejudice showing required to prove an abuse of discretion based on the expert witness.

Appellant also complained about the "*additional* notices of extraneous offenses" that the State had filed. The amended notices added five additional possible extraneous offenses to a list of eighty-five matters that the State had initially disclosed. Appellant never urged to the trial court what matters were added in the amended notices, nor how they affected trial preparation. The only other oral ground asserted by counsel was "certain limitations" on his ability to gather evidence and documents. The nature of those limitations was never developed, nor their significance explained. We can hardly fault the trial court's discretion in discounting them.

Appellant carries the burden to show prejudice from the lack of time to prepare. While the cross-examinations of the witnesses were short, our record does attribute that brevity to a lack of preparation as distinct from simply a lack of good questions to ask. Appellant called no witnesses in her defense which might be because counsel did not have time to find them. But it also could be that there were simply no witnesses who could aide her case. The trial court was not required to speculate on these matters, and neither are we.

Appellant also leans on her apparent desire to discharge trial counsel, a desire first expressed two days before trial, and first urged by trial counsel at the outset of trial. The Sixth Amendment affords a defendant the constitutional right to a reasonable opportunity to secure counsel of their choosing. *See Powell v. State of Alabama*, 287 U.S. 45, 69 (1932). However, that right is not absolute and must not "be manipulated so as to obstruct the orderly procedure in the

28

courts or to interfere with the fair administration of justice." *Webb v. State*, 533 S.W.2d 780, 784 (Tex.Crim.App. 1976).

Measuring this specific claim under the *Windham* factors convinces us it has no merit. First, Appellant's request to discharge her counsel (and presumably then continue the trial setting) would essentially request an indefinite length of delay because she had not retained any other counsel. The record reflects no prior continuances were requested, and this second factor weighs in her favor. Third, Appellant's attorney was appointed in February and he had five full months to prepare for trial. Moreover, Appellant and Appellant's attorney were aware of the trial date four months prior to trial, and by statute are only entitled to a minimum of ten-day's notice. TEX.CODE CRIM.PROC.ANN. art. 1.051(e). Fourth, another competent attorney was not prepared to try the case. Fifth, the record suggests resetting the trial involved inconvenience. The State had subpoenaed ten private citizens in whose name Medicaid claims were submitted. Sixth, the record could suggest the request for new counsel was based on an illegitimate or contrived reason. Appellant had been offered a plea of ten years deferred adjudication the month before trial, which she declined. By the time of trial, the State was only offering, and the trial judge indicated it would only accept, a plea that involved time to serve. Appellant's communication problems had as much to do with her desire to go back to the deferred adjudication offer as anything else.[7] Seventh, although the evidence in the case was somewhat voluminous, the question presented was straightforward. The State focused on twenty-seven customers and the claims submitted electronically to Medicaid for those persons. If the individual customers were believed that they

---

[7] Trial counsel's request to withdraw occurred just after a break when the parties discussed a plea deal. The trial court then stated:

> THE COURT: Let the record reflect we've had numerous off-the-record conversations. Defendant Serrano is adamant that she is -- will plea to deferred adjudication. It's been repeatedly explained to her there is no recommendation of deferred adjudication. In fact, it's -- it's not a recommendation. It's not within the realm of possibility.

did not receive as many replacement glasses as were billed in their name, the case was reduced to essentially a math problem of pegging the amount of overbilling--not to the penny--but between the range of $20,000 to $100,000. Eight, as we explain above, Appellant does not show an identifiable harm from her counsel's representation or trial preparation. Ninth, Appellant's appointed attorney provided adequate representation. He cross-examined witnesses, tested the State's expert, objected to evidence exhibits, and presented opening and closing statements. While our record cannot show if he could have done more, it demonstrates the attorney's preparedness and adequate representation. Ultimately, only one *Windham* factor--no prior continuances requested--favors the granting of the motion for continuance. The balance of the factors either cut against Appellant or are neutral at best. "[U]nder an abuse of discretion standard it is not our role to reweigh the factors, but to determine whether the trial court could reasonably have balanced them and concluded that the fair and efficient administration of justice weighed more heavily than appellant's right to counsel of his choice." *Rosales v. State*, 841 S.W.2d 368, 375 (Tex.Crim.App. 1992). Accordingly, if the request to withdraw is considered as a party of the motion for continuance, the trial court did not abuse its discretion in denying that request. Appellant's sixth issue is overruled.

Having overruled all of Appellant's issues, we affirm the conviction below.

April 30, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

30